UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 07 C 6661 |
| | ) | (01 CR 567-2) |
| | ) | Chief Judge James F. Holderman |
| | ) | |
| FRANK RODRIGUEZ | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO VACATE, SET ASIDE OR CORRECT SENTENCE**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, submits the following response to the petition of defendant Frank Rodriguez to vacate, set aside or correct sentence, stating as follows:

**I.   BACKGROUND**

    **A.   Facts of the Case**

In late May or early June of 2001, Rodriguez was introduced to a confidential informant working with the FBI (the "CI") by Britane Nathan. Nathan knew that the CI was looking for a source for narcotics, and arranged for the CI and Rodriguez to speak by phone. During that conversation, Rodriguez discussed selling the CI four pounds of marijuana or four ounces of crack cocaine.

On June 4, 2001, the defendant and Nathan bumped into the CI unexpectedly at a restaurant. At this meeting, Nathan gave the CI a slip of paper with prices for "white" (powder cocaine) and "trees" (marijuana) on it. The defendant then offered free samples of marijuana and cocaine to the CI, and agreed to meet later that evening to hand over the samples. That night, Rodriguez and the

1

CI met at a McDonald's. Rodriguez drove the CI to a side street and gave him samples of marijuana and powder cocaine. Rodriguez got the sample of cocaine from Pedro Castillo.

On June 6 and 7, 2001, Rodriguez and the CI traded a series of phone calls. On June 6, the defendant told the CI that he could get three ounces of crack cocaine from his "cousin," (who was actually Castillo) and that the price would be $3,000. Rodriguez had arranged to get the crack from Castillo, who, in turn, had arranged to get three ounces of powder cocaine from Alfredo Barrera and Barrera's aunt. On June 7, the defendant gave the CI pager and cell numbers for Castillo. The CI called Castillo, who confirmed the price would be $3,000 and told the CI to pick up the defendant, who would direct them to the house.

At 3:40 p.m. on June 7, Rodriguez called the CI and arranged to meet. Rodriguez then directed the CI to drive to the basement apartment located at 3328 W. 65th Place in Chicago. They parked in a garage behind the apartment. Once they arrived, the Castillo searched the CI for a gun and wire. Castillo then retrieved about three ounces of powder cocaine from a drawer in the garage and led the group into the basement area of the house.

There, they met Barrera. Barrera's aunt had provided the three ounces of powder cocaine to Castillo for the deal, and Barrera was at the apartment to act as security for the cocaine and to ensure that Barrera's aunt was paid. The group then spent about two hours in a kitchen area of the basement while Castillo cooked the powder cocaine into crack. Rodriguez remained in the basement apartment while Castillo cooked the cocaine, except for a brief trip to get beer with Barrera (during which Barrera discussed the price of the cocaine with Rodriguez) and some time that Rodriguez spent in another part of the house.

Once Castillo finished the cooking process, he gave the CI 72.3 grams of crack cocaine in

exchange for the $3,000. Castillo indicated that he could provide additional crack whenever the CI wanted. The CI and Rodriguez then drove away together. Later that day, Rodriguez called the CI and asked for money for his part in setting up the deal. The CI did not agree to pay Rodriguez. Castillo later provided $50-$100 to Rodriguez for setting up the deal.

On June 18, the CI called Rodriguez in an effort to arrange another crack deal with Castillo. When Rodriguez did not return the call promptly, the CI called Castillo directly. On June 20, Castillo and the CI met and conducted a 7-ounce crack cocaine deal with Barrera.

**B.    Rodriguez's Guilty Plea**

On May 2, 2002, defendant Frank Rodriguez appeared before this Court and, under oath, pled guilty to one count of conspiracy to distribute narcotics. That hearing was in fact the fourth time that Rodriguez had appeared before the Court relating to his guilty plea.

Rodriguez first appeared on April 25, 2002, but did not plead guilty on that date because his defense counsel indicated that he had difficulties communicating with Rodriguez about the plea. (April 25, 2002 Transcript, at 3-4, attached as Exhibit A).

Rodriguez then came before the Court again on April 30, 2002. On that date, the parties tendered a signed plea agreement to the Court. April 30, 2002 Transcript ("April 30 Tr."), at 5 (attached as Exhibit B). Rodriguez's plea colloquy was begun, but not completed because Rodriguez claimed that he had not received a copy of the indictment or discovery materials from his counsel, Raul Villalobos. April 30 Tr., at 10-11. After some discussion, Rodriguez was given a copy of the indictment in open court. April 30 Tr. at 13-14. The government also agreed to provide a full set of the discovery materials to Rodriguez at the

3

lockup in the Federal Building so that he would have an opportunity to review those materials. April 30 Tr., at 18-20.

On May 1, 2002, defendant Rodriguez appeared again before the Court. Rodriguez had received the full set of discovery materials, but not until approximately 5:00 p.m. the previous day. May 1, 2002 Transcript ("May 1 Tr."), at 3 (attached as Exhibit C). Accordingly, the parties agreed that Rodriguez would receive an additional set of discovery materials that day while at the Federal Building, and re-set the change of plea hearing for the following day. May 1 Tr., 4-7.

On May 2, 2002, Rodriguez entered a plea of guilty after an extensive plea colloquoy with the Court. May 2, 2002 Transcript ("May 2 Tr."), at 25 (attached as Exhibit D). In that colloquoy, Rodriguez indicated that he was satisfied with the advice and efforts of counsel on his behalf and that he'd had enough time to speak with counsel May 2 Tr., at 2. Rodriguez admitted that he had gone over the allegations in Count One of the indictment "word for word" with his counsel. May 2 Tr., at 6.

Rodriguez was also shown a copy of the signed plea agreement. May 2. Tr. at 12. He acknowledged that it was his signature on the plea and that he had read the plea agreement. May 2 Tr., at 12. The Court explicitly asked whether Rodriguez needed any additional time to read the plea agreement, and Rodriguez said he did not. May 2 Tr., at 12.

Despite all of his sworn statements and written acknowledgments, Rodriguez later moved to withdraw his guilty plea, claiming that: 1) he was innocent; 2) that the plea colloquoy was not sufficiently clear because the Court "reprimanded counsel for ill-advising

4

defendant as to Rule 11(e) sentencing cup [sic] provision;" and 3) his plea was not knowing and voluntary because his counsel never provided him with a copy of the indictment, the presentence report, or the plea agreement prior to his signing it.

After a hearing at which Rodriguez and his former counsel testified, the Court rejected Rodriguez's motion. In its ruling on December 5, 2002 (the "December 5 Order"), the Court rejected Rodriguez's claim of innocence, and concluded that Rodriguez's plea was knowing and intelligent. The Court found that Rodriguez's testimony was not credible, and that it "constituted a wilful attempt to obstruct justice and clearly demonstrated that defendant has not accepted responsibility for his crime." December 5 Order. As a result, the Court rejected Rodriguez's motion to withdraw his plea of guilty.

    **C.**    **Rodriguez's Sentencing Hearing**

At Rodriguez's sentencing, the Court found that Rodriguez had obstructed justice for two separate reasons. See December 17, 2002 Transcript ("Dec. 17 Tr.") at 26 (attached as Exhibit E). The Court first concurred with the recommendation of the probation officer that Rodriguez obstructed justice by sending a threatening letter to Brittane Nathan. *Id.* In that regard, the evidence showed that on about April 10, 2002, Rodriguez wrote and sent a letter from the Stephenson County Jail addressed to a relative of Nathan's. The letter, while addressed to Nathan's relative, contained information that was intended to be given to Nathan (the letter refers to "Nikki," which the CI informed the government was a nickname that Rodriguez used for Nathan). Rodriguez wanted Nathan to visit him the following Sunday. The letter contained a number of threats, including one in which Rodriguez said that if Nathan did not contact him by a certain date, "i will call my 3

brothers and my 6 cousins from their it will get very ugly once they find out im going to prison i cant control unless [Nathan] helps me. believe me its no joke these guy dont play and theirs nothing you or the FBI, or cops, or even god can do about it."

Second, the Court also found that Rodriguez obstructed justice when he testified falsely at his hearing with regard to his request to withdraw his guilty plea. Dec. 17 Tr. at 26. As a consequence, the Court applied the obstruction of justice enhancement to Rodriguez's sentence.

## II.　ANALYSIS

Rodriguez has challenged his conviction and sentence on three different grounds. None of those arguments hold any merit, and his petition should be denied.

### A.　Involuntary Plea/Ineffective Assistance of Trial Counsel

Rodriguez first argues that his plea of guilty was unknowing and involuntary because his counsel rendered ineffective assistance by failing to advise him that he was factually innocent of the charged crack conspiracy. Rodriguez argues that he was only guilty of participating in a powder cocaine conspiracy. That argument, however, necessarily ignores the evidence in the case, including Rodriguez's own admissions of his actions. As Rodriguez's own words demonstrate that he participated in the charged crack conspiracy, this claim must be denied without further hearing.

To establish ineffective assistance in the context of a guilty plea, Rodriguez must show that 1) his counsel's performance fell below an objective standard of reasonableness and 2) that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Bethel v. United States*, 458 F.3d 711, 715 (7th Cir. 2006). "A specific explanation of why the defendant alleges he would have gone to trial is required." *Santos v. Kolb*, 880 F.2d 941, 943 (7th Cir. 1989). "A mere allegation by the defendant that he would have

insisted on going to trial is not sufficient to establish prejudice." *Bethel*, 458 F.3d at 718 (citing cases). Here, Rodriguez has not satisfied either requirement.

Rodriguez's entire argument is premised on a flawed premise – namely that there was no evidence of Rodriguez's agreement to participate in a crack cocaine conspiracy, as opposed to a powder cocaine conspiracy. This is simply not true. There was plentiful evidence that Rodriguez knowingly entered into a crack cocaine conspiracy – he admitted as much during his plea colloquy. There, the prosecution summarized Rodriguez's actions in relevant part as the following:

> Over the next few days, the CI and defendant had a series of conversations in which defendant agreed to supply the CI with three ounces of crack cocaine in exchange for $3,000. Defendant arranged with Castillo to supply the three ounces of crack cocaine in the anticipated deal. In turn, Castillo arranged with Alfredo Barrera to supply the crack cocaine from a relative of Barrera's.
> On June 7th, 2001, the CI spoke with Castillo who confirmed that the deal for three ounces of crack would take place that day. Defendant and the CI then drove to 3328 W. 65th Place, Chicago, Illinois, where Castillo resided in a rented basement apartment. There, defendant and the CI met Castillo and Barrera. Castillo and the CI remained at the basement apartment for several hours while Castillo cooked about three ounces of powder cocaine into approximately 72.3 grams of crack cocaine. Defendant and Barrera stayed with Castillo and the CI for most of that period, leaving only for short errands. After Castillo finished preparing the crack, he gave it to the CI and took $3,000 in exchange. Shortly before the CI and defendant left the basement apartment, Castillo agreed with the CI that they would do future deals together. Defendant and the CI then left the basement apartment together.

May 2 Tr. at 19. At the conclusion of that recitation, Rodriguez admitted that this statement was "correct." *Id.* at 20.[1] Rodriguez's admission during his plea colloquy was also supported by the actual evidence in the case, as illustrated by the facts contained in the criminal complaint against Rodriguez. *See* Complaint (attached as Exhibit F).

The only error by counsel that Rodriguez identifies in his memorandum of law is his

---

[1] Rodriguez did disagree with another part of the prosecutor's summary of the evidence, but that objection related to the threatening letter he sent to Ms. Nathan. May 2 Tr. at 21.

counsel's supposed advice that Rodriguez should plead guilty to the charged crack conspiracy. One fundamental problem with Rodriguez's motion is that there is no factual support in his Declaration to support his allegations. The Declaration is silent as to what advice his trial counsel supposedly gave him about pleading guilty – in the absence of any factual showing by Rodriguez, his motion must fail. "Bald allegations unsupported by any evidence do not provide a basis for an evidentiary hearing." *Van Russell v. United States*, 976 F.2d 323, 325 (7th Cir. 1992), *overruled on different grounds*, *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)); see *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (quoting *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989)) ("'Mere unsupported allegations cannot sustain a petitioner's request for a hearing.'")

Further, even if this Court were to assume that Rodriguez's counsel had advised him to plead guilty to the crack conspiracy, Rodriguez's claim still fails. Rodriguez argues that this was "objectively unreasonable advice" because legally he could not be found guilty of participating in a crack conspiracy. Mem. at 24. That assertion, however, is just wrong. Rodriguez assisted Castillo's sale of crack to the CI (by negotiating the deal with the CI and bringing the CI to the crack house, among other things). Rodriguez's analogies to buyer-seller cases are unavailing – they simply do not describe the relationship between Castillo and Rodriguez here.

Similarly, Rodriguez reasons that he suffered prejudice here because he would never have pleaded guilty if he had recognized that the government lacked evidence of his participation in the crack conspiracy. Again, this is factually untrue, so Rodriguez has failed to establish either cause or prejudice, and this claim should be denied.

### B. Obstruction of Justice/Ineffectiveness of Appellate Counsel

Rodriguez next argues that the district court erred by finding that he obstructed justice on

the basis of the threatening letter he sent to Ms. Nathan. One of the most prominent problems with this argument is that it ignores that the Court found that Rodriguez obstructed justice on two separate grounds: 1) based on the threatening letter; and 2) based on Rodriguez's perjury during the hearing on his motion to withdraw his plea. Even if Rodriguez's arguments on the first ground had merit, which they do not, the Court would still have to dismiss this claim because the existence of the second, independent ground for the Court's finding essentially moots Rodriguez's entire claim for relief.

Rodriguez did not raise this claim on direct appeal, but seeks to avoid the resulting procedural bar by alleging that his appellate counsel was ineffective for failing to raise the matter. Rodriguez's attacks on the performance of his appellate counsel in this regard falls short. "Performance of appellate counsel is assessed according to the same standards applied to trial counsel under *Strickland v. Washington*." *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir.1996). Against the strong presumption of effectiveness, Rodriguez must again establish both defective performance and prejudice. "In the context of an appeal, counsel need not raise every conceivable argument that is supported by the record." *Hollenbeck v. United States*, 986 F.2d 1272, 1275 (7th Cir.1993). Appellate counsel is constitutionally ineffective only if "counsel fails to raise issues that are (1) obvious, and (2) clearly stronger than the ones raised." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir.1994). In order to establish prejudice, defendant must establish that an omitted issue would like likely have resulted in reversal. *See Mason*, 97 F.3d at 893. Rodriguez cannot meet his burden.

Here, Rodriguez insists that his appellate counsel should have raised an argument regarding whether he should have received the obstruction enhancement because of the threatening letter. That argument alone, however, would have no chance of affecting Rodriguez's sentence because of the

second basis for the Court's ruling, which Rodriguez has not challenged. Instead, Rodriguez's appellate counsel choose to pursue a stronger issue (challenging the determination that Rodriguez owed $3,000 in restitution when the money at issue was buy money), which in fact resulted in the Seventh Circuit remanding the case.

Further, there is no chance that Rodriguez suffered any prejudice resulting from his appellate lawyer's failure to raise the issue because he has no presented no argument that would suggest that this Court's original determination on the issue would be overturned. Much of Rodriguez's argument is premised on the idea that his letter could not have affected the investigation of his case because the letter was intercepted before it reached Ms. Nathan. That reasoning, of course, neglects the portion of USSG §3C1.1 that encompasses *attempts* to obstruct or impede the administration of justice. Further the fact that Rodriguez pleaded guilty three weeks after he sent the letter does not mean that he did not intend to obstruct justice when he actually wrote the letter. Finally, there is no reason to credit Rodriguez's novel construction of the letter as an attempt to encourage Ms. Nathan to speak the truth.

Given the presence of the unchallenged basis for the Court's opinion, there is no reason to hold a hearing on this issue. Accordingly, the Court should deny this ground for relief without a hearing.

      **C.**      **Withdrawal of Plea/Ineffectiveness of Appellate Counsel**

Finally, Rodriguez claims that his appellate counsel was also ineffective for failing to appeal this Court's decision to deny Rodriguez's motion to withdraw his guilty plea. Rodriguez, however, provides no explanation as to why this Court's original determination on that matter after receiving briefing and holding a hearing was in error. Accordingly, this aspect of Rodriguez's motion should

be denied as well.

Again, Rodriguez attempts to justify his failure to appeal this issue by citing ineffective assistance of appellate counsel. The decision not to appeal that issue, however, is reasonable in light of the record below. The Court held a hearing with the live testimony of Rodriguez's trial counsel and Rodriguez about the circumstances of Rodriguez's guilty plea. The Court made an explicit credibility finding that Rodriguez was lying and that his trial counsel was telling the truth. That finding would have been very difficult to disturb on appeal, and Rodriguez presents no reason to believe that the Court's initial decision was incorrect.

Similarly, Rodriguez cannot establish any prejudice from the decision not to appeal this Court's ruling. Rodriguez largely rehashes the same arguments he made initially, which this Court has already rejected. December 5 Order. Rodriguez now also claims that he had difficulty understanding his trial counsel. If this had actually been the case, Rodriguez undoubtedly would have raised the issue in his original motion to withdraw his plea, which heavily relied on an allegation of ineffectiveness of counsel. In fact, as demonstrated during his repeated court appearances and during the hearings on the motion to withdraw his plea, Rodriguez had no difficulty understanding what was happening in court, and demonstrated that he was willing to ask questions if he had any concerns.

In any event, regardless of any communications difficulties that might have existed, the Court ensured that Rodriguez understood his rights when he pleaded guilty, including that Rodriguez understood the crimes with which he was charged. Rodriguez's suggestion that his trial counsel should have communicated to him that he was guilty only of a powder cocaine conspiracy, as opposed to a crack conspiracy, is legally and factually wrong, as described above. Similarly,

11

Rodriguez's complaint about the absence of advice about an entrapment defense is also unavailing, given that this Court has already found that this defense was not legally available to Rodriguez. *See* December 5 Order.

Accordingly, Rodriguez fares no better on his third claim, and it should be denied as well.

### III. CONCLUSION

For the reasons stated above, the Court should deny Rodriguez's Motion without a hearing.

                                                  Respectfully submitted,

                                                  PATRICK J. FITZGERALD
                                                  United States Attorney

By:    s/Christopher S. Niewoehner
         CHRISTOPHER S. NIEWOEHNER
         Assistant United States Attorney
         219 South Dearborn Street
         Chicago, Illinois 60604
         (312) 353-3500

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO VACATE, SET ASIDE OR CORRECT SENTENCE**

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by First Class U.S. Mail on January 14, 2008, to the following non-ECF filer:

Frank Rodriguez
#13950-424
Beckley – FCI
P.O. Box 350
Beaver, WV  25813

s/Christopher Niewoehner
CHRISTOPHER NIEWOEHNER
Assistant United States Attorneys
219 South Dearborn
Chicago, Illinois  60604
(312) 353-3500
