# Exhibit B

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   UNITED STATES OF AMERICA,           )
                                         )
 4                Plaintiff,             )
                                         )
 5      vs.                              )  No. 01 CR 567-2
                                         )
 6   FRANK RODRIGUEZ,                    )  Chicago, Illinois
                                         )  April 30, 2002
 7                Defendant.             )  10:00 o'clock a.m.

 8

                   TRANSCRIPT OF PROCEEDINGS
 9        BEFORE THE HONORABLE JAMES F. HOLDERMAN

10

     APPEARANCES:
11
     For the Plaintiff:        HON. PATRICK J. FITZGERALD
12                             United States Attorney
                               219 South Dearborn Street
13                             Chicago, Illinois  60604
                               (312) 353-6117
14                             BY:  MR. CHRISTOPHER D. NIEWOEHNER

15   For the Defendant:        VILLALOBOS & ASSOCIATES
                               BY:  MR. RAUL VILLALOBOS
16                             1620 West 18th Street
                               Chicago, Illinois  60608
17                             (312) 666-9982

18   Also Present:             Mr. Jeffrey Granich

19

20

21

22

23
                      COLLEEN M. CONWAY, CSR, CRR
24                      219 South Dearborn Street
                              Room 2144-A
25                     Chicago, Illinois  60604
                              (312) 435-5594
```

**Exhibit B**

2

1        (Proceedings in open court.  Defendant not present in open

2        court).

3            THE CLERK:  01 CR 567, United States versus Rodriguez.

4            MR. NIEWOEHNER:  Good morning, your Honor.

5        Chris Niewoehner on behalf of the government.

6            MR. VILLALOBOS:  Attorney Raul Villalobos on behalf of

7    Mr. Frank Rodriguez.

8            MR. GRANICH:  Your Honor, my name is Jeffrey Granich.

9    I'd be seeking leave to file my appearance on this matter today.

10           MR. VILLALOBOS:  Judge --

11           THE COURT:  Is Mr. Rodriguez here?

12           MR. VILLALOBOS:  Yes, he is, Judge.

13           MR. GRANICH:  Yes, Judge.

14           THE COURT:  I don't see him.

15           THE MARSHAL:  Counsel had requested a few more minutes

16   to talk with him.

17           MR. GRANICH:  I was speaking to him, your Honor, about

18   my --

19           THE COURT:  You are whom again?

20           MR. GRANICH:  My name is Jeffrey Granich.  I was

21   recently retained.

22           THE COURT:  Mr. Granich, are you a member of the trial

23   bar here?

24           MR. GRANICH:  Yes, I am, Judge.

25           THE COURT:  Okay.  When did you become a member of the

3

1  trial bar?

2        MR. GRANICH:  In 1992, Judge.

3        THE COURT:  1982?  If I --

4        MR. GRANICH:  '92.

5        THE COURT:  I'm sorry?

6        MR. GRANICH:  '92.

7        THE COURT:  '92.

8        THE CLERK:  Can I have a spelling?

9        MR. GRANICH:  Sure, G-r-a-n-i-c-h.

10        THE CLERK:  And your first name?

11        MR. GRANICH:  Jeffrey.

12        THE COURT:  We're not talking about the general bar.

13  We're talking about the trial bar.

14        MR. GRANICH:  Judge, it's been some time since I've

15  been in federal court.  I know that I'm a member of the general.

16  I believe I am a member of the trial bar.

17        THE COURT:  If you're not a member of the trial bar,

18  you cannot represent a criminal defendant in this district.

19        So you became a member of the general bar when?

20        MR. GRANICH:  In '92.

21        THE COURT:  In 1992?

22        MR. GRANICH:  Yes.

23        THE COURT:  All right.  And you would have had to have

24  become a member --

25        MR. GRANICH:  I was sworn in in this building in 1992.

4

1        THE COURT:  That would be a general bar swearing-in,

2   and you would have had to have been a member of the trial bar

3   some time after that after you filed an application setting

4   forth your experience and paid your initial trial bar dues.

5        THE CLERK:  I have him as a member of the general bar

6   but not the trial bar.

7        THE COURT:  My clerk has pulled up the computer, and if

8   you are not a member of the trial bar, you cannot under our

9   local rules come in to represent a criminal defendant.

10        So I have to deny your request.

11        MR. GRANICH:  Thank you, Judge.

12        THE COURT:  If you want to --

13        MR. GRANICH:  If there is any --

14        THE COURT:  -- petition to become a member of the trial

15   bar at some point, then I'll certainly reconsider, but I can't

16   do anything today --

17        MR. GRANICH:  I understand, your Honor.

18        THE COURT:  -- because it would be violative of the

19   local rules.

20        MR. GRANICH:  I understand, your Honor.

21        I apologize.  I thought that I was a member of the

22   trial bar as well.

23        Thank you.

24        THE COURT:  Okay.  All right.

25        Well, what's the status?

5

1          MR. VILLALOBOS:  That's a good -- Judge, maybe we could

2   have another brief recess so I could talk to my client in view

3   of what has transpired.

4          THE COURT:  Okay.  How much time do you need?

5          MR. VILLALOBOS:  Ten minutes.

6          THE COURT:  All right.  Take a ten-minute recess.

7   Thank you.

8      (Recess.  Defendant present in open court.)

9          MR. NIEWOEHNER:  Good morning, your Honor.

10         Chris Niewoehner on behalf of the government.  Oh,

11  excuse me.

12         THE CLERK:  01 CR 567, United States versus Rodriguez.

13         MR. NIEWOEHNER:  Forgive me, your Honor.

14         Chris Niewoehner on behalf of the government.

15         MR. VILLALOBOS:  Attorney Raul Villalobos on behalf of

16  Mr. Frank Rodriguez.  Judge --

17         THE COURT:  All right.  Good morning.

18         Good morning, Mr. Rodriguez.

19         THE DEFENDANT:  Good morning, your Honor.

20         THE COURT:  What's the status?

21         MR. NIEWOEHNER:  Your Honor, we have a signed plea

22  agreement which I'll tender to the Court.

23         THE COURT:  All right.  Mr. Rodriguez, I understand

24  from this document that just was handed up to me that it's your

25  intention to offer a plea of guilty to Count 1; is that correct?

1    THE DEFENDANT:  Yes, your Honor.

2    THE COURT:  Now, before I can accept your plea of

3   guilty, I must determine several things.  I must determine that

4   you're competent to plead at this time, that you have had the

5   assistance of counsel, that you understand your trial rights,

6   you understand the nature of the charges against you, that your

7   plea is a voluntary act on your part, and that there is a

8   factual basis for your plea.

9    Do you understand what I have explained?

10    THE DEFENDANT:  Yes, your Honor.

11    THE COURT:  All right.  I must put you under oath and

12   ask you questions about this matter, but before I do that, I

13   want to make sure that you understand that you may consult with

14   your lawyer while I'm asking you these questions and I'll

15   interrupt the proceedings at any point to allow you to speak

16   with your lawyer merely upon your request.

17    Do you understand that?

18    THE DEFENDANT:  Yes, your Honor.

19    THE COURT:  Do you understand also that any false

20   answers to any questions that I ask you could subject you to a

21   possible prosecution for perjury or giving of a false statement?

22   And in giving truthful answers to some of my questions, you will

23   be waiving your right not to testify against yourself, some of

24   your answers will be incriminating, and you will have to admit

25   your guilt?   Do you understand what I have explained?

7

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  All right.  I'm going to ask my clerk to

3    swear in Mr. Rodriguez.

4              THE CLERK:  Raise your right hand.

5         (Defendant duly sworn.)

6              THE COURT:  All right.  Sir, would you state your full

7    name.

8              THE DEFENDANT:  Frank Rodriguez.

9              THE COURT:  All right.  And how old are you, sir?

10             THE DEFENDANT:  Twenty-seven years old.

11             THE COURT:  And where do you live?

12             THE DEFENDANT:  Chicago.

13             THE COURT:  All right.  Whereabouts in Chicago?

14             THE DEFENDANT:  4820 North Avers.

15             THE COURT:  All right.  And are you married, sir?

16             THE DEFENDANT:  No, no, I'm not.

17             THE COURT:  How far did you go in school?

18             THE DEFENDANT:  Twelfth grade.

19             THE COURT:  All right.  And did you graduate from high

20   school?

21             THE DEFENDANT:  No, I did not.

22             THE COURT:  All right.  What kind of work have you done

23   in the last three years?

24             THE DEFENDANT:  Basically worked at car dealerships and

25   delivery driver and copier delivery and copier technician.

8

1          THE COURT:  All right.  And are you in good physical

2   health?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Have you taken any drugs or

5   alcoholic beverages within the last 24 hours?

6          THE DEFENDANT:  No, I have not.

7          THE COURT:  All right.  Have you ever been under the

8   care of a doctor or in a hospital for a mental condition or

9   addiction to narcotic drugs?

10          THE DEFENDANT:  No.

11          THE COURT:  All right.  Let me ask counsel if either of

12   you have any doubt as to Mr. Rodriguez's competence to plead

13   guilty at this time?

14          MR. VILLALOBOS:  No, Judge.  I have talked to Mr.

15   Rodriguez at length about this plea.  I believe he is competent

16   to plead, undertake this plea agreement.

17          MR. NIEWOEHNER:  Your Honor, the only thing is what Mr.

18   Villalobos last Thursday raised, that his client was excited.

19          I think if Mr. Villalobos is not concerned, then the

20   government has no further information that would make us

21   question his competency.

22          THE COURT:  All right.  Mr. Villalobos, you made a

23   comment that was kind of, in my opinion, a little bit out of the

24   blue, that was never anticipated from seeing Mr. Rodriguez over

25   the time that he's been a defendant in front of me that you

1  thought he needed to be examined for competency.

2           Now you have no problem with his competency?

3           MR. VILLALOBOS:  That's -- Judge, I think the part that

4  I was alluding to was the fact that we were having somewhat of a

5  difficult time preparing for the trial and discussing his

6  analysis of how the trial should be conducted, and we could not

7  come to agreement as to that aspect of the trial.

8           THE COURT:  Mr. Rodriguez had a certain view as to how

9  the trial should be conducted?

10          MR. VILLALOBOS:  That is correct, Judge.

11          THE COURT:  Was that view contrary to your view?

12          MR. VILLALOBOS:  It'd be contrary to my advice on how

13  it should be conducted if this went to trial.

14          THE COURT:  Was it a logical view?

15          MR. VILLALOBOS:  I believe that based on my experience

16  as a trial lawyer that my viewpoint would result -- would be

17  better helping him in his trial.  His view is different than

18  that of his father's.  So I said that basically that the way we

19  conducted trials here, certain evidence could not be admissible,

20  I tried to explain to Mr. Rodriguez.

21          THE COURT:  Well, people have differences of opinion.

22  That doesn't mean one of the people who differs in his opinion

23  is incompetent.  But you took it to a whole new level that I

24  certainly never anticipated, and certainly from viewing and

25  speaking with Mr. Rodriguez today and speaking with Mr.

10

1    Rodriguez every time he's been in court, I never thought that

2    anyone would believe that somehow he's not competent.

3           And so you're saying that you raised his competency

4    because he disagreed with your trial strategy?

5           MR. VILLALOBOS:  That was part of it, Judge, yes.

6           THE COURT:  Mr. Rodriguez, I want to hear anything you

7    want to say.  You just raised your hand, and I want --

8           THE DEFENDANT:  Yes.

9           THE COURT:  -- to hear --

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  -- what you want to say, yes.

12          THE DEFENDANT:  Okay, your Honor.  Like I said previous

13   when I spoke in front of you, the reason why I was getting so

14   loud -- and I believe what happened between my defense attorney

15   and I was something between he and I.

16          Now, why I believe that based on what my arguments were

17   to him, he went back and told prosecution that I was crazy and I

18   was going off with him, this and that, but the reason why I was

19   so upset with him, as your Honor knows, four times he came to

20   see me, he refused to give me a copy of my indictment and he

21   also refused to give me what the evidence was towards my case.

22   And I asked him four times that he visited me, and he refused to

23   give them to me.  I asked him, "Do you not work for me?"  He

24   said, "I do not work for you."

25          Later, the second time he visited me, he said, "Well"

11

1  -- my father wanted to fire him.  He said, "Well, your father

2  wants to fire me, but, you know, you're my client, you know.

3  So, you know, I really want, you know, to listen to you, not to

4  your father, because you're my client."  And I said, "Wait a

5  minute.  Didn't I" -- "didn't we" -- "you told me last week you

6  weren't" -- "you didn't work for me, but yet I can't" -- "you're

7  supposed to be my defense attorney, but yet you're supposed to

8  give me what the evidence is which I have no documents of."

9  Even to this day now I have no documents, no nothing of my case

10 which I asked him for.

11        THE COURT:  Okay.

12        THE DEFENDANT:  And that's the reason why I was, you

13 know, getting excited and arguing, because -- I mean, I believe

14 I -- it's somewhat of the law that they're supposed to give you,

15 you know, any type of document pertaining to your case, and I

16 never received anything, even when I asked him, and that's the

17 reason why I got excited with him, and I don't know what the

18 reason was for it.

19        THE COURT:  Mr. Villalobos, what about your client's

20 comments?

21        MR. VILLALOBOS:  Judge, there are certain documents

22 that I did not -- that I -- we discussed but I did not give him

23 copies of.

24        THE COURT:  What are those documents?

25        MR. VILLALOBOS:  Judge, the documents regarding one of

12

1  the government witnesses.

2          THE COURT:  Well, did you give him a copy of the

3  indictment?

4          MR. VILLALOBOS:  Judge, I think he gave me a copy of

5  the indictment.  Well, his father gave me a copy of documents,

6  that he had the indictment.

7          THE COURT:  My question to you, sir, is:  Did you give

8  him a copy of the indictment?

9          MR. VILLALOBOS:  No, I did not.

10          THE COURT:  All right.  And the reason you did not give

11  him a copy of the indictment was because you believed he already

12  had a copy of the indictment when --

13          MR. VILLALOBOS:  Well, we went through the charges of

14  the indictment, the counts, two counts of the indictment.  I

15  didn't --

16          THE COURT:  That wasn't my question.

17          MR. VILLALOBOS:  I did not give him a physical

18  document.

19          THE COURT:  And the reason you didn't give him a copy

20  of the indictment was that you thought he already had a copy of

21  the indictment?

22          MR. VILLALOBOS:  No, Judge, I -- the reason I didn't

23  give it to him on that day was because I didn't have it and --

24          THE COURT:  I'm not talking about any particular day.

25  I'm talking about ever.

13

1    Did you ever give him a copy of the indictment?

2    MR. VILLALOBOS:  No, I did not.

3    THE COURT:  And what is the reason, I will ask a

4    non-leading question since you don't seem to want to answer my

5    leading question, what is the reason that you didn't give him a

6    copy of the indictment?

7    MR. VILLALOBOS:  Judge, he did not request one until

8    just a little while ago.  We were --

9    THE COURT:  So when I asked at the initial arraignment

10   did he have a copy of the indictment, that was an incorrect

11   statement when I was told he was given a copy of the indictment?

12   MR. NIEWOEHNER:  Your Honor, if I might, there was a

13   different lawyer who was representing him, Frank Tedesso.  I had

14   given him a copy of the indictment.

15   THE COURT:  Okay.  Well, Mr. Villalobos --

16   MR. VILLALOBOS:  Yes.

17   THE COURT:  -- give him a copy of the indictment.

18   MR. VILLALOBOS:  That's fine.

19   THE COURT:  A criminal defendant is entitled to a copy

20   of his indictment.  Mr. Rodriguez is absolutely correct on that

21   point.  It seems to me that it shows substantial competency on

22   his part.

23   MR. NIEWOEHNER:  Your Honor, I have a copy of the

24   indictment which I'll tender to defense counsel.

25   THE COURT:  All right.

14

1          MR. VILLALOBOS:  Here's a copy of the indictment.

2      (Discussion between defendant and his attorney.)

3          THE COURT:  Mr. Villalobos, I didn't say read it to

4  him.  I said give it to him.

5          MR. VILLALOBOS:  Yes, sir.

6          THE COURT:  All right.  So, Mr. Rodriguez, what else

7  didn't he give you?

8          THE DEFENDANT:  Just basically the copy of the

9  indictment.  I mean --

10         THE COURT:  Okay.  And there were some other papers?

11         THE DEFENDANT:  Yeah, but --

12         THE COURT:  The discovery?

13         THE DEFENDANT:  Yeah, I never got the lab results or no

14  discovery, and I asked him for it, like I said, four times, and

15  every time he came back -- the thing is to me it was kind of --

16  to me, I mean, like you say, I have to be honest, but to me, I

17  believe -- you know, I can't tell anybody their job, but I

18  believe as somebody who has a title of a very important role as

19  an attorney, to be more professional, whereas to -- if I asked

20  you -- if you came to see me four times, and each time I asked

21  you, "Next time you come, could you please bring me the" --

22  "any, you know, whatever evidence may be, whether it'd be

23  discovery or lab results," and every time he came back, "Well, I

24  forgot it in the office.  I forgot it in the office," I mean, it

25  seems to me if you visit your client, you're supposed to write

15

1    things down.  And I asked him several times to write stuff down.

2    He refused to.

3            THE COURT:  Mr. Villalobos?

4            MR. VILLALOBOS:  Judge, like I said, the last time he

5    gave -- asked me for the indictment, it was today.

6            Other requests that I -- he did not make the requests

7    of me, and that's part of the disagreement that we had, is that

8    he would tell me certain things that I -- that he said, and I

9    disagreed with him, and then we'd get into discussions about

10   how -- about what was requested.

11           THE COURT:  All right.  Well, I don't want to get in to

12   that.

13           MR. VILLALOBOS:  I know.

14           THE COURT:  Did the government turn over any discovery

15   material in this case to Mr. Rodriguez's counsel?

16           MR. NIEWOEHNER:  The government has always turned it

17   over to counsel of record.  Much of it was turned over to Jim

18   Graham, who is I believe Mr. Villalobos' predecessor, and some

19   to Frank Tedesso.

20           I'd have to go look at my records to see what precisely

21   was -- I turned over to Mr. Villalobos, but, yes, the government

22   has turned over quite a bit of discovery in this case, your

23   Honor.

24           THE COURT:  All right.  Mr. Villalobos, have you

25   provided Mr. Rodriguez with a copy of the discovery the

16

1  government gave to you on this case?

2          MR. VILLALOBOS:  I did not, Judge.

3          The documents that I received from Mr. Rodriguez were

4  the discovery that I received from the government.

5          THE COURT:  So did you receive any discovery material

6  from the government, Mr. Villalobos?

7          MR. VILLALOBOS:  Yes, I did.  No, I -- well, through

8  Mr. Graham.

9          THE COURT:  I'm going to ask that question again, and

10 I'm going to ask you to answer the question that I posed.

11         MR. VILLALOBOS:  I'm just --

12         THE COURT:  Did you receive any discovery material from

13 the government?

14         MR. VILLALOBOS:  Yes, I did.

15         THE COURT:  Okay.  Did you receive that discovery

16 material directly from the government or through Mr. Rodriguez's

17 prior counsel?

18         MR. VILLALOBOS:  The majority through Mr. Graham, the

19 prior counsel, and Mr. Rodriguez himself.

20         THE COURT:  Did you receive any of the discovery

21 material that you received from the government directly from the

22 government?

23         MR. VILLALOBOS:  Yes, I did.

24         THE COURT:  Did you turn that discovery material that

25 you received directly from the government over to Mr. Rodriguez

17

1  so he could review it?

2       MR. VILLALOBOS:  Yes, I did.

3       THE COURT:  Mr. Rodriguez, did you get discovery

4  material from Mr. Villalobos?

5       THE DEFENDANT:  No, I did not.

6       THE COURT:  Okay.  Mr. Villalobos, did you give to

7  Mr. Rodriguez the discovery material that you had received from

8  Mr. Graham?

9       MR. VILLALOBOS:  No, no, your Honor, because -- well,

10  no.

11       THE COURT:  Why not?

12       MR. VILLALOBOS:  Because Mr. Rodriguez had that same

13  material.  And I got -- received what Mr. Graham had given him,

14  he gave it to me, and then I received Mr. Graham's packet, which

15  was identical.

16       THE DEFENDANT:  Your Honor, if I may?

17       THE COURT:  You may.

18       THE DEFENDANT:  Okay.  According to what he -- he's --

19  the reason why I was asking for the papers, the copy of the

20  evidence, lab results and so forth, is because when he came to

21  see me, the things I read previously from the paperwork that

22  Graham had were different from the things he was speaking to me

23  of.  So, therefore, I must know, you know, where my previous

24  attorney wasn't -- you know, as if when it was -- it wasn't what

25  we had on paperwork, according to what you're, you know,

1  explaining to me.  That's why I asked him, you know, "Where is a

2  copy of, you know, what are you speaking of?"  You know, that's

3  why I asked him before the time he came to visit me I needed to

4  see the copy of my -- whatever it may be, evidence or lab

5  results or so forth, and he refused to give it to me.

6  　　　　　And I reminded him every time he left, you know, to

7  write it down, and he refused to write it down.  For what reason

8  I do not know.

9  　　　　　THE COURT:  Mr. Niewoehner, do you have a record in

10  your file of the discovery material that you have provided to

11  the various counsel of Mr. Rodriguez?

12  　　　　　MR. NIEWOEHNER:  I do, your Honor.  I have -- I keep a

13  Bates label, and I -- yes is the --

14  　　　　　THE COURT:  I assumed you did.

15  　　　　　How difficult would it be to photocopy again all of the

16  material you provided to the various lawyers who have

17  represented Mr. Rodriguez?

18  　　　　　MR. NIEWOEHNER:  I have a master set, your Honor, so

19  it's a relatively easy procedure.

20  　　　　　THE COURT:  Okay.  So how long would it take you to do

21  that?

22  　　　　　MR. NIEWOEHNER:  Because I know of the time

23  sensitivity, I can go down and in a half an hour to an hour I

24  would imagine I could get what I have in my master discovery

25  file, and I can check and see if there's anything that wasn't in

1   it.

2        THE COURT: Okay. Let me ask the marshals who are here

3   in the courtroom, is there a location that Mr. Rodriguez could

4   review materials in the marshals' lockup today?

5        THE MARSHAL: Yes, Judge.

6        THE COURT: Okay.

7        I have no doubt that Mr. Rodriguez is competent to

8   offer a plea of guilty. I want to make sure that he's fully

9   informed about all the information that he should be informed of

10   before he offers a plea of guilty. I want to make sure that he

11   feels that he is fully informed about all the information he

12   should have before he makes the decision to offer a plea of

13   guilty. I want to avoid further conflict between he and his

14   lawyer, if that's possible. I don't want to have to make a

15   decision as to who's telling the truth between defendant or

16   counsel.

17        I just want to make sure that Mr. Rodriguez has all the

18   information that he should have, and so I'm going to ask

19   government counsel to make a photocopy, deliver that photocopy

20   to the marshals' lockup, I'm going to ask the marshals to

21   provide that information that government counsel brings to the

22   marshals' lockup to Mr. Rodriguez, and we will set the case for

23   a further status.

24        Let me just ask the marshals, can Mr. Rodriguez take

25   the legal documents or at least can the legal documents that Mr.

20

1    Rodriguez receives be transported to the MCC?

2            THE MARSHAL:  Absolutely, Judge.

3            THE COURT:  Okay.  All right.

4            You know, I won't set the case for status.  We are set

5    for trial.  If after reviewing the materials Mr. Rodriguez

6    desires to persist in his plea of guilty, I would ask that he do

7    so and let his lawyer know and then we will set a further date.

8    If he desires he does not want to persist in a plea of guilty,

9    we are set for trial.

10           When is the trial preparation date?

11           MR. NIEWOEHNER:  It was actually yesterday, your Honor.

12   We --

13           THE COURT:  It was yesterday.

14           MR. NIEWOEHNER:  The government was going to -- because

15   it was this morning, was not going to -- was going to sort of

16   let it lie, as it were.

17           THE COURT:  Okay.  All right.  Well, perhaps we then

18   better set the case for further report on status tomorrow so

19   that we will know.

20           Let me ask what your respective schedules are at 2:00

21   o'clock tomorrow afternoon?

22           MR. NIEWOEHNER:  Your Honor, I'm supposed to be in a

23   sentencing hearing before Judge Grady at 2:00.

24           THE COURT:  All right.  And when is that sentencing

25   hearing going to be over?

21

1         MR. NIEWOEHNER:  Unfortunately, that's going to be, I

2    would anticipate, several hours.

3         I could get co-counsel if I -- he's not here, he's at a

4    sentencing hearing before another judge right now, but I could

5    ascertain whether he's available or whether I could get somebody

6    else to stand in --

7         THE COURT:  Okay.

8         MR. NIEWOEHNER:  -- if that's most convenient with your

9    Honor.

10        THE COURT:  All right.  Well, 2:00 o'clock would be the

11   best for me, but I don't want to inconvenience any lawyers, but

12   I do want to accomplish whatever Mr. Rodriguez wants to

13   accomplish in this matter.

14        Mr. Villalobos, are you available tomorrow?

15        MR. VILLALOBOS:  I am available at 2:00 o'clock.

16        THE COURT:  All right.  Why don't we set it for 2:00

17   o'clock.  I will just ask government counsel to see if you can

18   get somebody to cover this.  I'd appreciate it.

19        MR. NIEWOEHNER:  And, your Honor, just so you're aware,

20   there are tapes.  The one thing I won't be able to duplicate

21   easily are tapes that were previously given.  I'll give the

22   transcripts that the government has prepared.

23        THE COURT:  That would be appropriate.

24        You previously provided the tapes to counsel?

25        MR. NIEWOEHNER:  Yes, yes, your Honor.

22

1        THE COURT:  All right.  Mr. Villalobos, did you play

2    those tapes for your client?

3        MR. VILLALOBOS:  Yes, I received the tapes, the

4    government tapes as well as an additional set of tapes which is

5    identical to the government tapes, for Mr. Rodriguez.

6        THE COURT:  So what's the answer to my --

7        MR. VILLALOBOS:  Yes.

8        THE COURT:  -- question?

9        MR. VILLALOBOS:  Yes, I have.

10       THE COURT:  Okay.  Good.

11       MR. VILLALOBOS:  And also transcripts.

12       THE COURT:  All right.

13       MR. VILLALOBOS:  We also received the transcripts.

14       THE COURT:  Yes, just the transcripts, it seems to to

15   me, to be sufficient, but let me just double-check.

16       Mr. Rodriguez, have you listened to the tapes?

17       THE DEFENDANT:  The ones that Graham gave me, yeah, but

18   the ones told me here, here are some different tapes that he

19   heard -- he said they were different from the ones I had.  So I

20   don't know what's -- that's why I asked, you know, for the

21   paperwork and evidence based on what he told me, because I -- I

22   mean, I had -- Graham gave me six tapes that I heard, and I gave

23   them to him.  He said that he didn't hear them tapes.  He heard

24   some other tapes that the government gave him, that they're

25   supposed to be the same ones but some are more clear, I don't

1    know, the quality, some --

2         THE COURT:  Okay.  All right.  Well, let me just ask,

3    to make sure that the content of the tapes are the same, the

4    government has transcripts of the tape-recorded conversations

5    that are in the government's possession that contain the

6    statements of the defendant?

7         MR. NIEWOEHNER:  That's correct, your Honor.

8         THE COURT:  All right.  And you are going to provide

9    those with the photocopying that you're going to do now?

10        MR. NIEWOEHNER:  That's exactly right, your Honor.

11        THE COURT:  Okay.  All right.  Those are the

12   transcripts of the tapes that the government has.

13        So I don't know what Mr. Villalobos has, but what you

14   are going to get, Mr. Rodriguez, is what the government has in

15   transcript form, okay?

16        THE DEFENDANT:  Thank you, your Honor.

17        THE COURT:  Thank you.

18        MR. NIEWOEHNER:  Thank you, your Honor.

19        MR. VILLALOBOS:  Thank you.

20        (Proceedings concluded.)
                        C E R T I F I C A T E
21             I, Colleen M. Conway, do hereby certify that the
     foregoing is a complete, true, and accurate transcript of the
22   proceedings had in the above-entitled case before the Honorable
     JAMES F. HOLDERMAN, one of the judges of said Court, at Chicago,
23   Illinois, on April 30, 2002.

24             Official Court Reporter                   Date
              United States District Court
25            Northern District of Illinois
                    Eastern Division