# Exhibit D

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   UNITED STATES OF AMERICA,          )
                                        )
 4                 Plaintiff,           )
                                        )
 5      vs.                             )  No. 01 CR 567-2
                                        )
 6   FRANK RODRIGUEZ,                   )  Chicago, Illinois
                                        )  May 2, 2002
 7                 Defendant.           )  2:12 o'clock p.m.

 8
                 TRANSCRIPT OF PROCEEDINGS - Change of Plea
 9               BEFORE THE HONORABLE JAMES F. HOLDERMAN

10
     APPEARANCES:
11
     For the Plaintiff:           HON. PATRICK J. FITZGERALD
12                                United States Attorney
                                  219 South Dearborn Street
13                                Chicago, Illinois  60604
                                  (312) 353-6117
14                                BY:  MR. CHRISTOPHER D. NIEWOEHNER

15   For the Defendant:           VILLALOBOS & ASSOCIATES
                                  BY:  MR. RAUL VILLALOBOS
16                                1620 West 18th Street
                                  Chicago, Illinois  60608
17                                (312) 666-9982

18

19

20

21

22

23                    COLLEEN M. CONWAY, CSR, CRR
                      219 South Dearborn Street
24                           Room 2144-A
                      Chicago, Illinois  60604
25                         (312) 435-5594
```

**Exhibit D**

2

1          (Proceedings in open court.)

2               THE CLERK:  01 CR 567, United States versus Rodriguez.

3               MR. NIEWOEHNER:  Good afternoon, your Honor.

4          Chris Niewoehner on behalf of the government.

5               MR. VILLALOBOS:  And Attorney Raul Villalobos on behalf

6     of Frank Rodriguez, Judge.

7               THE COURT:  Good afternoon.

8          Good afternoon, Mr. Rodriguez.

9               THE DEFENDANT:  Good afternoon, your Honor.

10              THE COURT:  Mr. Rodriguez, have you had enough time to

11    look over those materials now?

12              THE DEFENDANT:  Yes.

13              THE COURT:  All right.  What is your desire?

14              THE DEFENDANT:  I wish to plead guilty, your Honor.

15              THE COURT:  All right.  You understand that you are

16    still under oath, under the oath that was administered to you

17    earlier in these proceedings?  Do you understand that?

18              THE DEFENDANT:  Yes, I do, your Honor.

19              THE COURT:  Do you wish to change any of the answers to

20    any of the questions that I earlier asked you?

21              THE DEFENDANT:  No, I do not, your Honor.

22              THE COURT:  All right.  Are you satisfied with the

23    advice and efforts of your attorney on your behalf?

24              THE DEFENDANT:  Yes.

25              THE COURT:  And have you had enough time to talk with

3

1  your attorney about this matter?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, when you talked with your attorney,

4  did he explain to you the nature of the charge in Count 1 of

5  this indictment?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And have you read a copy of Count 1 of the

8  indictment?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  All right.  Do you understand the nature of

11 the charge in Count 1?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  Mr. Villalobos, if you could

14 just relate for the record what you explained to your client he

15 was charged with doing when you discussed the nature of the

16 charge in Count 1 with him.

17         MR. VILLALOBOS:  Judge, I did have time to, extensive

18 time to --

19         THE COURT:  You what?

20         MR. VILLALOBOS:  I did have extensive time because of

21 the continuing --

22         THE COURT:  You did?

23         MR. VILLALOBOS:  I did, did have extensive time to go

24 over the plea and what it meant, Count 1, which is a conspiracy

25 count, and that the --

4

1          THE COURT:  Tell me what you told him.

2          MR. VILLALOBOS:  That it has a minimum sentence, that

3    it's not a --

4          THE COURT:  What kind of a minimum sentence did you

5    tell him it had?

6          MR. VILLALOBOS:  It had a minimum of ten years.

7          THE COURT:  Well, just relate --

8          MR. VILLALOBOS:  Okay.

9          THE COURT:  -- what you told him.

10         MR. VILLALOBOS:  Okay.  I told him that it had a

11   minimum of ten years, that it's a -- basically an open plea.  I

12   told him that he's not going to get the ten years.  It's

13   depending -- it's going to be a -- probation department will

14   make an investigation.  Depending on their investigation and

15   also at the sentencing -- because he wanted to know if there was

16   a cap, and I said there is no cap, not in federal court.

17         THE COURT:  Well, there is a cap.

18         MR. VILLALOBOS:  Well --

19         THE COURT:  The statutory maximum is the cap.

20         MR. VILLALOBOS:  It's the -- right.  But, I mean --

21         THE COURT:  Well, you told him there's no cap.  That's

22   wrong.  There is a cap.

23         MR. VILLALOBOS:  No, there is no cap as to -- in his

24   plea, there -- there's no cap as far as ten years is not the

25   cap, it's a minimum, because he wanted to know if he could --

5

1          THE COURT:  Well, did you -- I know, I understand it.

2     Did you --

3          MR. VILLALOBOS:  Yes.

4          THE COURT:  -- explain that to him?

5          MR. VILLALOBOS:  Yes, I did.

6          THE COURT:  When you told him --

7          MR. VILLALOBOS:  Yes.

8          THE COURT:  -- there is no cap, there is, in fact, a

9     cap.  In fact, we're going to have that cap established on this

10    record before we complete these proceedings.

11          Now, when you told him there is no cap, what did you

12    mean?

13          MR. VILLALOBOS:  Well, there is no cap as far as a --

14    you don't plead guilty to a particular number of years here.

15    He's not pleading to nine years or six years.  That will be

16    determined by your Honor.

17          THE COURT:  And that's what you told him?

18          MR. VILLALOBOS:  Well, along with reading the plea

19    agreement.  And that at the end, after the sentencing, they will

20    dismiss Count 2 and there would be no trial.  He won't present

21    witnesses.  We can't make any other motions.  We can't -- he'll

22    won't be seeing the testimony against him.  He's basically --

23    he's pleading to the indictment, Count 1, and I read through the

24    indictment of Count 1.

25          THE COURT:  Did you answer any questions that he had

6

1  about Count 1?

2       MR. VILLALOBOS:  Yes.  We answered a lot of questions.

3  We talk for probably I think at least two or three days on

4  questions as to the allegations in Count 1.  In fact, we took it

5  sentence and even word per word.

6       THE COURT:  Is that true, Mr. Rodriguez?

7       THE DEFENDANT:  Yes, it is.

8       THE COURT:  Did your lawyer answer all the questions

9  that you had regarding the charge in Count 1?

10       THE DEFENDANT:  Yes.

11       THE COURT:  Do you have any questions now about the

12  charge in Count 1?

13       THE DEFENDANT:  No, I do not.

14       THE COURT:  Do you understand that Count 1 allegedly

15  charges a conspiracy to possess with intent to distribute and

16  the distribution of mixtures containing cocaine base, also known

17  as crack?  Do you understand that?

18       THE DEFENDANT:  Yes.

19       THE COURT:  Do you understand the conspiracy allegedly

20  began in late May of 2001 and continued until about June 20th,

21  2001?

22       THE DEFENDANT:  Yes.

23       THE COURT:  Do you understand that a conspiracy is an

24  agreement between two or more persons to do something that the

25  law prohibits?

7

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you have any questions at all about the

5    nature of the charge of conspiracy in Count 1 of this

6    indictment?

7          THE DEFENDANT:  No.

8          THE COURT:  Do you understand that charge, sir?

9          THE DEFENDANT:  Yes.

10          THE COURT:  I want to make sure that you understand the

11    trial rights that you are waiving by pleading guilty.

12          Do you understand that under the Constitution and the

13    laws of the United States, you are entitled to a trial by a jury

14    on this charge?  Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand you have the right to

17    plead not guilty?

18          THE DEFENDANT:  Yes.

19          THE COURT:  If you plead not guilty, you have a right

20    to a speedy trial to see and hear all the witnesses called to

21    testify against you, to use the subpoena power of the Court to

22    obtain the attendance of witnesses, and your counsel would have

23    a right to cross-examine any witnesses called by the government

24    and call witnesses on your own behalf.

25          Do you understand that?

8

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that at trial you would

3    be presumed to be innocent and the government would be required

4    to prove you guilty by competent evidence beyond a reasonable

5    doubt before you could be found guilty and you would not have to

6    prove your innocence at all?  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that at any trial, while

9    you would have a right to testify if you chose to testify, you

10   also have a right to not testify and no inference or suggestion

11   of guilt could be drawn from the fact that you did not testify

12   in the case?  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  Now, the trial could either be

15   a jury trial or a trial by a judge without a jury.  However, if

16   the trial were a trial by a judge without a jury, the judge,

17   yourself, and the government would all have to agree to that

18   procedure.

19         Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that if there was a jury

22   trial, that you would proceed before a jury that's composed of

23   12 persons selected under the laws of the United States?  Do you

24   understand that?

25         THE DEFENDANT:  Yes.

9

1          THE COURT:  And you understand that you and your

2     attorney would have an opportunity to exclude certain people

3     from sitting on that jury for two basic reasons.  One is by

4     exercising what is called a challenge for cause, which means if

5     any prospective juror is shown to not be able to be fair in your

6     case, they would be excluded from sitting on the jury.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And you understand that you also could

10     exclude people from sitting on the jury by exercising what are

11     called peremptory challenges.  The Federal Rules of Criminal

12     Procedure allow you a certain number of peremptory challenges,

13     which means you can exclude that certain number of people from

14     sitting on the jury without having to give any reason why you

15     don't want those people on the jury.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Now, do you understand also that the trial

19     could be a trial before a judge without a jury?  Do you

20     understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And if that is the circumstance, the judge,

23     yourself, and the government would all have to agree to that

24     procedure before it was followed.

25          Do you understand that?

1        THE DEFENDANT:  Yes.

2        THE COURT:  All right.  Now, if it was a jury trial,

3   once the jury was selected, the jury would have to agree

4   unanimously, would consider each count of the indictment

5   separately, would consider each defendant on trial separately in

6   making its unanimous determinations.

7        Do you understand that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  All right.  Do you understand that the jury

10  would make those determinations after hearing all the evidence,

11  after hearing the arguments of your counsel and the government

12  counsel, and also hearing the jury instructions on the law that

13  the judge would read to the jury?  Do you understand that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Do you understand that at any trial,

16  whether it'd be a trial by a judge without a jury or a jury

17  trial, the judge or the jury would be guided by the rule which

18  requires that your guilt be proven beyond a reasonable doubt?

19  Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  And if your guilt is not proven beyond a

22  reasonable doubt, then the jury or the judge would have to

23  return a verdict of not guilty.

24        Do you understand that?

25        THE DEFENDANT:  Yes.

11

1          THE COURT:  Do you understand that if at trial you were

2    found guilty, you would have a right to appeal from any legal

3    errors committed at the trial?  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that if you plead guilty,

6    you are waiving all of these rights that I have explained to

7    you?  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that by pleading guilty,

10   you are abandoning any pretrial motions or objections that have

11   been made or could be made on your behalf to any of the District

12   Court proceedings?  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that if you plead guilty

15   and I accept your plea, there will not be a trial in your case

16   and I will enter a finding of guilty and sentence you on the

17   basis of your plea after considering a presentence investigation

18   report and after hearing from your counsel, the government

19   counsel, and yourself here in open court before I make a final

20   determination as to the appropriate sentence in your case?  Do

21   you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Now, I have before me a document entitled

24   Plea Agreement.  It contains a signature of an individual, Frank

25   Rodriguez.

12

1        Is that your signature on the tenth page of this plea

2   agreement?

3        THE DEFENDANT:  Yes, it is, your Honor.

4        THE COURT:  Now, before you signed the plea agreement,

5   did you read it over?

6        THE DEFENDANT:  Yes.

7        THE COURT:  You hesitated when you answered that

8   question.  Do you need more time to read it over?

9        THE DEFENDANT:  No, your Honor.

10        THE COURT:  Is there a reason you hesitated?

11        THE DEFENDANT:  No.

12        THE COURT:  Did you discuss the plea agreement with

13   your attorney?

14        THE DEFENDANT:  Yes, I did, your Honor.

15        THE COURT:  And are there any other promises or any

16   other agreements that have been made to induce you to plead

17   guilty to Count 1 in this case that aren't set forth in this

18   written plea agreement?

19        THE DEFENDANT:  What was that, your Honor?  Could you

20   repeat that again, please.

21        THE COURT:  Yes.  Have any other agreements or any

22   other promises been made to you to cause you to plead guilty

23   that aren't in this written plea agreement?

24        THE DEFENDANT:  No.

25        THE COURT:  Is your decision to plead guilty entirely

13

1   voluntary on your part?

2        THE DEFENDANT:  Yes, it is, your Honor.

3        THE COURT:  All right.  Now, there are a couple of

4   parts of the plea agreement that I want to specifically ask

5   about.  We will get into the maximum penalties which are, in

6   fact, the cap that the government and I must abide by in

7   determining an appropriate sentence.

8        But in paragraph 10, you agree that money paid to the

9   members of a conspiracy as part of the undercover investigation,

10  commonly referred to as "buy money," in the amount of $3,000

11  will be ordered to be paid by you jointly and severally with

12  your co-defendants, Pedro Castillo and Alfredo Barrera, as a

13  condition of your supervised release.

14       Do you understand that?

15       THE DEFENDANT:  Yes.

16       THE COURT:  There is no waiver of right to appeal, is

17  there?

18       MR. NIEWOEHNER:  That's correct, your Honor.

19       THE COURT:  There is no waiver of the 2255 --

20       MR. NIEWOEHNER:  That's also correct.

21       THE COURT:  -- rights?  And it is agreed under

22  paragraph 15 of the agreement that at the time of sentencing,

23  each party is free to make any recommendation it deems

24  appropriate, correct?

25       MR. NIEWOEHNER:  That's correct, your Honor.

14

1      MR. VILLALOBOS:  That's correct.

2      THE COURT:  All right.  And you understand that, Mr.

3  Rodriguez?

4      THE DEFENDANT:  Oh, yes, I do, your Honor.

5      THE COURT:  Now, the government has agreed to dismiss

6  the remaining count of the indictment at the time of sentencing

7  as well, which your counsel mentioned.

8      Do you understand that?

9      THE DEFENDANT:  Yes, your Honor.

10     THE COURT:  All right.  So the sentence, you

11 understand, could be up to the maximum penalties imposed, that

12 could be imposed under the statute if this case were tried, even

13 on this plea of guilty if that is appropriate, under a proper

14 application of the United States sentencing guidelines?  Do you

15 understand that?

16     THE DEFENDANT:  Yes, your Honor.

17     THE COURT:  All right.  Are there any other specific

18 aspects of the plea agreement that we should specifically

19 mention before we talk about what those maximum penalties are?

20     MR. NIEWOEHNER:  No, your Honor.

21     MR. VILLALOBOS:  No, your Honor.

22     THE COURT:  Mr. Rodriguez, do you understand each of

23 the terms in each of the paragraphs of the plea agreement?

24     THE DEFENDANT:  Yes, your Honor.

25     THE COURT:  Mr. Villalobos, do you believe your client

15

1    understands each of the terms in each of the paragraphs of the

2    plea agreement?

3              MR. VILLALOBOS:  I do believe it, your Honor.

4              THE COURT:  All right.  Let me ask, then, for the

5    government to tell us what the maximum penalties are that could

6    be imposed under the statute.

7              MR. NIEWOEHNER:  Your Honor, under the statute, with

8    regard to Count 1 to which the defendant will plead guilty, the

9    maximum penalty is a penalty of life imprisonment and it carries

10   a mandatory minimum sentence of ten years' imprisonment, a

11   maximum fine of $4 million, a term of supervised release of at

12   least five years and up to any number of years, including life,

13   as well as any restitution ordered by the Court, and there is a

14   hundred-dollar special assessment.

15             THE COURT:  Do you understand, Mr. Rodriguez, that you

16   could be sentenced up to life in prison?  Do you understand

17   that?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  And do you understand that you must be

20   sentenced to at least ten years in prison?  Do you understand

21   that?  That's the minimum mandatory sentence.  Do you understand

22   that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Also, you could be fined up to $4 million.

25   Do you understand that?

16

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And following any term of imprisonment,

3   there is a requirement that you be placed on supervised release

4   for at least five years, and that supervised release term could

5   be up to the rest of your life?  Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  So what that means is even though you'd

8   already been in prison once for whatever the period of time is,

9   at least ten years as part of the sentence, after you're

10  released from prison, you'll be on supervised release and you

11  must comply with the conditions of your supervised release, and

12  if you fail to do so, you could be put back in prison for the

13  remaining portion of the supervised release period?  Do you

14  understand that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  All right.  Also as part of the sentence, I

17  must order restitution.  You have agreed to pay the $3,000

18  jointly and severally with your co-defendants.

19         Let me just ask the government, is there any other

20  restitution the government will be seeking?

21         MR. NIEWOEHNER:  No, your Honor.

22         THE COURT:  All right.  Also, as the Assistant U.S.

23  Attorney indicated, there's a special assessment that must be

24  imposed of $100.  I have no discretion in that regard.  That

25  must be imposed.

1          And I see pursuant to the last sentence of paragraph 9

2    you agree to pay that special assessment of $100 at the time of

3    sentencing.  Do you agree to that?  Paragraph 9, page 7, last

4    sentence.

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  All right.  I need to make sure that the

7    record is clear on this.

8          Has anyone forced you in any way to plead guilty?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Has anyone threatened you in any way to

11    cause you to plead guilty?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  And apart from this plea agreement, have

14    any promises been made to you to cause you to plead guilty?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  Is your decision to plead guilty entirely

17    voluntary on your part after discussing the matter with your

18    attorney?

19          THE DEFENDANT:  Yes, it is, your Honor.

20          THE COURT:  Have any promises been made to you by your

21    attorney or anyone else regarding sentencing other than what we

22    have talked about here?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  You do understand that the final decision

25    as to what your sentence will be rests with me?  Do you

18

1  understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  All right.  Let me ask the government,

4  then, to briefly summarize what the evidence would be with

5  respect to Mr. Rodriguez's involvement in the crime charged in

6  Count 1 if this case were tried.

7          MR. NIEWOEHNER:  Your Honor, the government's evidence

8  would show that from in or about late May 2001 until on or about

9  June 20th, 2001, at Chicago and elsewhere, in the Northern

10  District of Illinois, Defendants Alfredo Barrera and Pedro

11  Castillo did conspire with each other and with others known and

12  unknown to the grand jury knowingly and intentionally to possess

13  with intent to distribute and to distribute controlled

14  substances, namely, in excess of 50 grams of mixtures containing

15  cocaine base, also known as crack, a Schedule II narcotic drug,

16  controlled substance, in violation of Title 21 U.S.C. Section

17  841(a)(1) and Title 18 U.S.C. Section 2.

18          Specifically, in late May or early June 2001, a

19  confidential informant working with the Federal Bureau of

20  Investigation spoke with defendant about purchasing quantities

21  of cocaine and marijuana.  Defendant told the CI that he could

22  supply either narcotic and agreed to provide the CI with

23  samples.

24          On June 4th, 2001, defendant gave the CI samples of

25  powder cocaine and marijuana.  Defendant had obtained the sample

1  of cocaine he gave to the CI from Pedro Castillo.

2  Over the next few days, the CI and defendant had a

3  series of conversations in which defendant agreed to supply the

4  CI with three ounces of crack cocaine in exchange for $3,000.

5  Defendant arranged with Castillo to supply the three ounces of

6  crack cocaine in the anticipated deal.  In turn, Castillo

7  arranged with Alfredo Barrera to supply the crack cocaine from a

8  relative of Barrera's.

9  On June 7th, 2001, the CI spoke with Castillo who

10  confirmed that the deal for three ounces of crack would take

11  place that day.  Defendant and the CI then drove to 3328 West

12  65th Place, Chicago, Illinois, where Castillo resided in a

13  rented basement apartment.  There, defendant and the CI met

14  Castillo and Barrera.  Castillo and the CI remained at the

15  basement apartment for several hours while Castillo cooked about

16  three ounces of powder cocaine into approximately 72.3 grams of

17  crack cocaine.  Defendant and Barrera stayed with Castillo and

18  the CI for most of that period, leaving only for short errands.

19  After Castillo finished preparing the crack, he gave it to the

20  CI and took $3,000 in exchange.  Shortly before the CI and the

21  defendant left the basement apartment, Castillo agreed with the

22  CI that they would do future deals together.  Defendant and the

23  CI then left the basement apartment together.

24  Defendant was arrested on July 27th, 2001.  When he was

25  arrested, defendant was carrying two baggies containing powder

1   cocaine, a total of .97 grams, and 28 Ritalin pills, 2.8 grams,

2   methylphenidate hydrochloride.  Defendant was keeping 67 grams

3   of marijuana in his family's refrigerator.  Defendant also had a

4   black shoulder holster with a magazine holder, a magazine with

5   nine rounds of ammunition, a plastic gun case, and a

6   gun-cleaning rod in his bedroom.

7        The government's evidence would show that on or about

8   April 10th, 2002, the defendant wrote and sent a letter from the

9   Stevenson County Jail addressed to individual B that contained

10  information that was intended to be given witness A in the case.

11  Witness A had introduced the defendant to the CI in this case.

12       In the letter, the defendant asked witness A to visit

13  him at the Stevenson County Jail.  In the letter, the defendant

14  said that if witness A did not contact him by a certain date, "I

15  will call my three brothers and my six cousins.  From there, it

16  will get very ugly.  Once they find out I'm going to prison, I

17  can't control unless witness A helps me.  Believe me, it's no

18  joke.  These guys don't play, and there's nothing you or the FBI

19  or cops or even God can do about it."

20       THE COURT:  All right.  Mr. Rodriguez, you have heard

21  the statement of the Assistant United States Attorney as to what

22  the evidence would show.  Is that statement correct?

23       THE DEFENDANT:  Yes, it is.

24       THE COURT:  Is there any part of the statement that you

25  disagree with?

1        (Defendant conferring with his attorney.)

2            THE DEFENDANT:  The part from the letter.

3            THE COURT:  The part from the letter?

4            THE DEFENDANT:  Yeah.

5            THE COURT:  All right.  What is it about the part from

6    the letter that you disagree with?

7            THE DEFENDANT:  Because this part is from the whole

8    letter.  You have to read the whole letter.  It's -- he only

9    took a part in there, where he's putting it in like to like a

10   bodily threat from when I see how they put it.

11           THE COURT:  So you could see from the part that the

12   Assistant U.S. Attorney read that a person could interpret it as

13   a threat?

14           THE DEFENDANT:  The person -- yeah, depending who reads

15   the letter, yeah.

16           THE COURT:  Okay.  But you're saying that the letter

17   ought to be read in its entirety for context in order to

18   understand the full meaning of the letter?

19           THE DEFENDANT:  Exactly.

20           THE COURT:  All right.  So if I for purposes of

21   determining whether I should accept the guilty plea for Count 1

22   exclude from my consideration any reference to the letter and I

23   read the letter myself before I determine the appropriate

24   sentence, would that be agreeable with you if you persist in

25   your plea of guilty?

22

1              THE DEFENDANT:  Yes.

2              THE COURT:  All right.  Does the government have a copy

3  of the letter?

4              MR. NIEWOEHNER:  I do, your Honor.  I don't have a

5  clean copy --

6              THE COURT:  Okay.

7              MR. NIEWOEHNER:  -- to hand you up, but I will --

8              THE COURT:  Could you prepare a clean copy, provide a

9  clean copy to defense counsel.

10             And, Mr. Villalobos, I am going to order you to make a

11 copy within 24 hours of your receipt of that letter.

12             Why do you keep looking up at the ceiling?

13             MR. VILLALOBOS:  I'm not.

14             THE COURT:  Are you listening to me?

15             MR. VILLALOBOS:  Yes, your Honor.

16             THE COURT:  Within 24 hours of receiving the copy of

17 the letter that the government is going to provide you, you are

18 to provide it to Mr. Rodriguez.

19             Do you understand?

20             MR. VILLALOBOS:  Yes, your Honor.

21             MR. NIEWOEHNER:  If it's of some assistance, your

22 Honor, that copy of that letter was given to Mr. Rodriguez in

23 the package of materials that the government tendered both

24 times.

25             THE COURT:  Twice.

23

1          MR. NIEWOEHNER:  Yes.

2          THE COURT:  Have you seen the letter, Mr. Rodriguez, in

3   the materials?

4          THE DEFENDANT:  Yes, I have, your Honor.

5          THE COURT:  Well, then we don't have to give you

6   another copy.  That's the letter, right?

7          THE DEFENDANT:  Yeah.

8          THE COURT:  So I'll just ask the government to give me

9   a copy.

10         MR. NIEWOEHNER:  And I would prefer to get a clean copy

11  for your Honor.

12         THE COURT:  That's what I want.  I want a copy that is

13  in the same condition as when Mr. Rodriguez sent the letter.

14         MR. NIEWOEHNER:  And I will, it will be done.  It's in

15  evidence right now.  I'll need to get it out to make a clean

16  photocopy, but I will --

17         THE COURT:  By "in evidence," you're talking like an

18  agent.  You mean --

19         MR. NIEWOEHNER:  Yes, yes.

20         THE COURT:  -- it's in some way been maintained so that

21  the evidentiary chain of custody has been preserved?

22         MR. NIEWOEHNER:  That's exactly correct, your Honor.

23         THE COURT:  All right.  You don't have a clean copy in

24  the office that you can copy?

25         MR. NIEWOEHNER:  When they copied it, they cut off a

24

1   corner, and so I need to get the --

2          THE COURT:  I appreciate the conscientious way you're

3   addressing that.  If you could do that and then give me the

4   clean copy, then you can return it to the evidence preservation

5   area.

6          I am not going to consider any part of the proffered

7   evidence today regarding the reference to the letter.  I am

8   going to review the letter myself before I determine the

9   appropriate sentence, and I will hear from you, Mr. Rodriguez,

10  and your counsel as to anything you want to tell me about that

11  letter.

12         Other than the reference to the letter, do you disagree

13  with any part of the statement?

14         THE DEFENDANT:  You mean that what it says, actual --

15  about --

16         THE COURT:  What the Assistant U.S. Attorney just said,

17  other than the reference to the letter.

18         He made a reference to the letter.  You disagreed with

19  that reference.  I am not going to consider that for purposes of

20  determining whether there's a factual basis for your guilty plea

21  here today, but if you plead guilty, I will use that to

22  determine the appropriate sentence as part of the consideration

23  that I have, and you want me to, right?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Okay.  All right.  So other than the

1  letter, do you disagree with any part of the statement that's

2  been made here by the Assistant U.S. Attorney regarding your

3  involvement in the crime charged in Count 1?

4          THE DEFENDANT:  No.

5          THE COURT:  All right.  Are you, in fact, guilty of the

6  crime charged in Count 1?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Then, Mr. Rodriguez, bearing

9  everything in mind that we have discussed here today with regard

10  to this charge, what is your plea with regard to Count 1 of this

11  indictment?

12          THE DEFENDANT:  Guilty, your Honor.

13          THE COURT:  All right.  Since you have acknowledged

14  that you are, in fact, guilty and there is a sufficient factual

15  basis for the guilty plea that's been proffered here today, and

16  since you have had the assistance of counsel, you know what your

17  trial rights are, you know what the maximum possible punishment

18  is, and you are voluntarily pleading guilty, I will accept your

19  plea of guilty, enter a finding of guilty on the plea.

20          I am going to order a presentence investigation report

21  to be prepared.  I am going to ask my clerk to suggest a

22  sentencing date that would allow sufficient time for that report

23  to be prepared, reviewed, and commented on by counsel and Mr.

24  Rodriguez before I rely upon it.

25          THE CLERK:  August 20th.

26

1    THE COURT: All right. My clerk has suggested August
2 20th. Can everybody be here at that time?
3    MR. NIEWOEHNER: Yes, your Honor.
4    THE COURT: That's a Tuesday.
5    MR. VILLALOBOS: Yes, your Honor.
6    THE COURT: All right. August 20th at 1:30.
7    My clerk will also give you a schedule that will be
8 part of the minute order from today's proceedings that you
9 should comply with so that we can proceed with sentencing in
10 this case regarding Mr. Rodriguez on August 20th at 1:30.
11    Anything else we need to take up now?
12    MR. NIEWOEHNER: No, your Honor.
13    MR. VILLALOBOS: No, your Honor.
14    THE COURT: All right. We will see you on August 20th.
15 Thank you.
16    (Proceedings concluded.)
17          C E R T I F I C A T E
18    I, Colleen M. Conway, do hereby certify that the
19 foregoing is a complete, true, and accurate transcript of the
20 proceedings had in the above-entitled case before the Honorable
21 JAMES F. HOLDERMAN, one of the judges of said Court, at Chicago,
22 Illinois, on May 2, 2002.

23                                          6/6/02
24          Official Court Reporter              Date
            United States District Court
25          Northern District of Illinois
            Eastern Division