# Exhibit E

02-4344

1

FILED

1          IN THE UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

MAR 2 5 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

3   UNITED STATES OF AMERICA,        )
                                     )
4              Plaintiff,            )
                                     )
5       vs.                          )   No. 01 CR 567-2
                                     )
6   FRANK RODRIGUEZ,                 )   Chicago, Illinois
                                     )   December 17, 2002
7              Defendant.            )   9:30 o'clock a.m.

8

9          TRANSCRIPT OF PROCEEDINGS - Sentencing
         BEFORE THE HONORABLE JAMES F. HOLDERMAN

10

11  APPEARANCES:

12  For the Plaintiff:         HON. PATRICK J. FITZGERALD
                               United States Attorney
13                             219 South Dearborn Street
                               Chicago, Illinois  60604
14                             (312) 353-6117
                               BY:  MR. CHRISTOPHER D. NIEWOEHNER

15  For the Defendant:         LAW OFFICES OF RAYMOND L. PRUSAK
                               BY:  MR. RAYMOND L. PRUSAK
16                             1021 West Adams Street, Suite 102
                               Chicago, Illinois  60607
17                             (312) 226-0640

18  U.S. Probation:            Ms. Jennifer Cox

19  Also Present:              FBI Agents Frank DiPodesta and
                                             Frank Sodetz

20

U.S.C.A.—7th Circuit

FILED

21

SP   APR  3 2003   **Clerk's Copy**

22

GINO J. AGNELLO
        CLERK

23

DOC. #_____

24                  COLLEEN M. CONWAY, CSR, CRR
                       219 South Dearborn Street
                             Room 2144-A
25                     Chicago, Illinois  60604
                          (312) 435-5594

**Exhibit E**

**Colleen M. Conway, Official Court Reporter**

149

**Amended Certificate of Service**

I, Lisa M. Noller, an attorney, certify that I caused a copy of the Reply of the United States On Sentencing Pursuant to Limited Remand by the Court of Appeals to be served on Hope Lefeber, 620 Chestnut Street, Philadelphia, PA, 19106, by U.S. Mail, on this 15th day of July, 2005, and on Andrew J. McGowan, Staff Attorney, 401 Main Street, Suite 1500, Peoria, IL, 61602, by placing a copy of the document in the U.S. Mail, on this 15th day of July, 2005.

Lisa M. Noller

JUDGE'S COPY

JUL 1 5 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

7

2

1          (Proceedings in open court.)

2               THE CLERK:  01 CR 567-2, United States versus

3    Rodriguez.

4               MR. NIEWOEHNER:  Good morning, Your Honor.

5          Chris Niewoehner on behalf of the government.

6               THE COURT:  Good morning.

7               MR. PRUSAK:  Good morning, Your Honor.

8          For the record, Raymond Prusak appearing on behalf of

9    Frank Rodriguez.

10              MS. COX:  Good morning, Your Honor.

11         Jennifer Cox on behalf of Probation representing Jodi

12   Halleran, the author of the presentence report.

13              THE COURT:  Yes.  Good morning.

14         And good morning, Mr. Rodriguez.

15              THE DEFENDANT:  Good morning, Your Honor.

16              THE COURT:  All right.  Mr. Rodriguez, have you had a

17   chance to review the Presentence Investigation Report?

18              THE DEFENDANT:  No.

19              THE COURT:  Well, all right.  When can counsel meet

20   with Mr. Rodriguez to go over the Presentence Investigation

21   Report?

22              MR. PRUSAK:  Judge, I thought he had, had done that

23   with his previous lawyer several months ago.

24              THE COURT:  You didn't go through it with him again?

25              MR. PRUSAK:  I -- well --

**Colleen M. Conway, Official Court Reporter**

3

1          THE COURT:  Okay.

2          MR. PRUSAK:  -- a couple of times we went over it,

3   Your Honor.

4          THE COURT:  Okay.

5          MR. PRUSAK:  The main points, not the entire document

6   itself.

7          THE COURT:  Okay.  Well, why don't you take the time

8   now, and we'll resume again when you're ready.

9          MR. PRUSAK:  Thanks.  Should only be a few minutes,

10  Judge.

11         THE COURT:  How many minutes do you think it will be?

12         MR. PRUSAK:  Five or ten, Judge.  I mean, we've

13  covered it before and -- you know, the main points, but --

14         THE COURT:  Mr. Rodriguez, you have looked at it

15  before, but you haven't gone over it with this lawyer?

16         THE DEFENDANT:  No, I haven't.

17         THE COURT:  You haven't?

18         THE DEFENDANT:  I haven't gotten it from my previous

19  lawyer.  He hasn't even showed me anything.

20         THE COURT:  He hasn't shown it to you?  Okay.  All

21  right.  Well, let me see if we can make some adjustments,

22  then.

23         Okay.  Well, when do you think you folks would be

24  available, then, to proceed with the sentencing?

25         MR. PRUSAK:  Your Honor, I'm scheduled to leave town

**4**

1  tomorrow afternoon or tomorrow evening for a two-week

2  vacation.

3         THE COURT:  Well, we certainly want to accomplish it

4  before your two-week vacation.

5         MR. NIEWOEHNER:  I'm available this afternoon, Your

6  Honor, if that permits sufficient time.

7         THE COURT:  All right.  Well, why don't we say 1:30

8  this afternoon, then.

9         Mr. Prusak, are you available?

10        MR. PRUSAK:  Yes, Your Honor.

11        THE COURT:  All right.  This will give you time

12 between now and then to go through the presentence report.

13        Mr. Rodriguez, you keep signaling to someone back

14 there, I guess your father in the back of the courtroom.

15        Is there something that you wanted to communicate to

16 him?

17        THE DEFENDANT:  I thought I was going to have another

18 attorney to argue my sentencing.

19        THE COURT:  You thought you were going to have

20 another attorney arguing your sentencing?

21        THE DEFENDANT:  Yeah.

22        THE COURT:  What other attorney were you going to

23 have arguing your sentencing?

24        THE DEFENDANT:  Tom Clancy.

25        THE COURT:  You were going to have Tom Clancy arguing

5

1  your sentencing?

2          THE DEFENDANT:  That's what I was told to me.  I

3  mean --

4          THE COURT:  Did you hire Tom Clancy?

5          THE DEFENDANT:  Well, I don't know.  That's -- you

6  know, I spoke to my father.  I mean, I -- I mean, he has

7  documents to my case, so, I mean, obviously I figured he's my

8  attorney.  I mean --

9          THE COURT:  Who's that?

10          THE DEFENDANT:  Tom Clancy.  I visited with him, I

11  spoke to him, so -- he has my documents pertaining to my case,

12  so I don't know -- I figured he's my attorney.  That's what he

13  told me.  He would be here today to argue my sentencing,

14  that's what I thought, but --

15          THE COURT:  Okay.  Well, your sentencing was set for

16  9:30.  Did you tell him that when you spoke with him?

17          THE DEFENDANT:  That's what -- I don't know.  My

18  father, he's -- that's what I'm trying to figure out.  My

19  father's in the courtroom.  I'm trying --

20          THE COURT:  No, I'm asking you, sir, if you told him

21  9:30.

22          THE DEFENDANT:  Yes, yes, Your Honor.  He knows, he

23  knows.

24          THE COURT:  Okay.

25          THE DEFENDANT:  That's why I'm trying to figure out

6

1    why he's not here.

2            THE COURT:  All right.  Well, perhaps you can

3    communicate with him and tell him that it's now set for 1:30.

4            Thank you.

5            MR. NIEWOEHNER:  Thank you, Your Honor.

6            THE COURT:  All right.  We will stand in recess until

7    11:00 o'clock when we call the next case.

8        (Recess from 9:45 a.m. until 1:30 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7

1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   UNITED STATES OF AMERICA,          )
                                       )
4                 Plaintiff,           )
                                       )
5       vs.                            )   No. 01 CR 567-2
                                       )
6   FRANK RODRIGUEZ,                   )   Chicago, Illinois
                                       )   December 17, 2002
7                 Defendant.           )   1:30 o'clock p.m.

8

            TRANSCRIPT OF PROCEEDINGS - Sentencing
9        BEFORE THE HONORABLE JAMES F. HOLDERMAN

10
    APPEARANCES:
11
    For the Plaintiff:         HON. PATRICK J. FITZGERALD
12                             United States Attorney
                               219 South Dearborn Street
13                             Chicago, Illinois  60604
                               (312) 353-6117
14                             BY:  MR. CHRISTOPHER D. NIEWOEHNER

15  For the Defendant:         LAW OFFICES OF RAYMOND L. PRUSAK
                               BY:  MR. RAYMOND L. PRUSAK
16                             1021 West Adams Street, Suite 102
                               Chicago, Illinois  60607
17                             (312) 226-0640

18  U.S. Probation:           Ms. Jennifer Cox

19  Also Present:              FBI Agents Frank DiPodesta and
                                           Frank Sodetz
20

21                       Clerk's Copy

22

23
                   COLLEEN M. CONWAY, CSR, CRR
24                   219 South Dearborn Street
                          Room 2144-A
25                   Chicago, Illinois  60604
                         (312) 435-5594

8

1           (Proceedings in open court.)

2                THE CLERK:  01 CR 567, United States versus

3   Rodriguez.

4                MR. NIEWOEHNER:  Good afternoon, Your Honor.

5           Chris Niewoehner on behalf of the government.

6                THE COURT:  Good afternoon.

7                MR. PRUSAK:  Good afternoon, Your Honor.

8           For the record, my name is Raymond Prusak appearing

9   on behalf of Frank Rodriguez.

10               THE COURT:  Good afternoon.

11               MS. COX:  Good afternoon, Your Honor.

12          Jennifer Cox from Probation standing in for the

13  author of the report, Jodi Halleran.

14               THE COURT:  Yes.  Good afternoon.

15          Good afternoon, Mr. Rodriguez.

16               THE DEFENDANT:  Good afternoon, Your Honor.

17               THE COURT:  Mr. Rodriguez, have you had enough time

18  to review the Presentence Investigation Report?

19               THE DEFENDANT:  Yes, Your Honor.

20               THE COURT:  All right.  Are there any changes or

21  modifications that need to be made in the factual statements

22  set forth in the report?

23               MR. PRUSAK:  He hasn't --

24               THE COURT:  Do you see any -- in your review, Mr.

25  Rodriguez, do you see any need for change or modification in

**Colleen M. Conway, Official Court Reporter**

9

1   the factual statements in the report?

2              THE DEFENDANT:  No.

3              THE COURT:  No?  All right.  Mr. Prusak, did you see

4   anything on behalf of your client that should be modified or

5   changed from a factual standpoint?

6              MR. PRUSAK:  No, Your Honor.  I filed a motion

7   objecting to the report, and I laid that out; but other than

8   that, no.

9              THE COURT:  All right.  I understand the motion that

10  you filed, but the motion that you filed really is the

11  application of the law to the facts.  I didn't see any real

12  argument with the facts.

13             MR. PRUSAK:  No, Your Honor.  There's no argument

14  with the facts at all.

15             THE COURT:  The Probation Department has prepared an

16  excellent report, and I appreciate that.

17             With regard to the motion that's been filed, the

18  objections are to the guideline calculations.  And first there

19  is the -- and the government has filed a response.  The first

20  is the role in the offense.

21             Is there anything that either counsel desires to say

22  with regard to the role-in-the-offense adjustment?

23             MR. PRUSAK:  I do, Your Honor.

24             THE COURT:  All right.

25             MR. PRUSAK:  If I may address the Court?

10

1          THE COURT:  You may.

2          MR. PRUSAK:  On page 8 of the Presentence

3  Investigation Report --

4          THE COURT:  Yes.

5          MR. PRUSAK:  -- adjustment for role in the offense, I

6  think this sentence is very important in your determining

7  whether Mr. Rodriguez should get some adjustment downward or

8  not.

9          It states on line 252 that:  "Evidence does not

10  suggest that Defendant Rodriguez could be considered an

11  organizer, leader, manager, or supervisor in the instant

12  case."

13          THE COURT:  Yes.

14          MR. PRUSAK:  "He was, however, an active participant

15  in the offense, and, therefore, his actions were not those of

16  minimal or minor participant in the concerted activity," and

17  then they go on to say:  "Therefore, no adjustment is

18  applicable."

19          Your Honor, we disagree with the last part of the two

20  sentences I just read.  I think it's, you know, the

21  government's contention as well as anybody who looks at this

22  case that Mr. Rodriguez was not an organizer, leader, manager,

23  or supervisor.  It's our contention that the -- his

24  involvement was not essential in this matter for the

25  transaction to actually take place.

11

1          Your Honor is familiar with the facts, but briefly

2    what happened here was Brittany Nathan, a former girlfriend of

3    Mr. Rodriguez, had approached him to -- because the

4    confidential informant had approached her.  Why the

5    confidential informant approached her, I have no idea.  But

6    she went to her old boyfriend and asked him to do her a favor,

7    and for whatever reason, Mr. Rodriguez agreed to this.  I'm

8    sure he regrets it now.

9          But it really wasn't a pecuniary interest that he was

10   looking to promote for himself.  He was not -- if any monetary

11   amount was to be gotten by Mr. Rodriguez, I think the evidence

12   would show that it's only a few hundred dollars at most.  What

13   probably happened here is Mr. Rodriguez was trying to do his

14   old girlfriend a favor.

15         Now, it's our contention again that had he given her

16   a phone number of the people that he eventually hooked up with

17   with the confidential informant, his involvement would have

18   been completely non-essential to this transaction; whereas,

19   Brittany Nathan, who was not charged for whatever reason, her

20   involvement was essential for this transaction to take place

21   because she's the one that brought the parties, namely, Mr.

22   Rodriguez and the confidential informant, together.

23         I think I need to speak about Mr. Rodriguez's mental

24   capacities at this time, Your Honor, and I --

25              THE COURT:  All right.  Well, let me just stick with

**Colleen M. Conway, Official Court Reporter**

12

1   the role adjustment --

2           MR. PRUSAK:  Yes, Judge.

3           THE COURT:  -- argument first, and I'll hear from the

4   government on that point.

5           MR. NIEWOEHNER:  Your Honor, the government's laid

6   out the factual version in its filing.  I know you're familiar

7   with the case.

8           THE COURT:  Yes.

9           MR. NIEWOEHNER:  I think Mr. Rodriguez played an

10  integral role as a broker here.  He was the only person who

11  knew both Brittany Nathan -- well, in fact, Brittany Nathan,

12  there's no evidence that she knew Pedro Castillo.  Mr.

13  Rodriguez was the contact to Pedro Castillo who became the

14  source for the deal.  Without him, there is no deal.

15          Mr. Rodriguez played roles in addition to that in

16  terms of providing samples, negotiating, and providing

17  security at the deal itself that take him beyond even a

18  mere -- just a broker.  He's a broker plus.  Therefore, I

19  think while we're not arguing that he should get an

20  enhancement for this, I don't think a minor role is

21  appropriate here.

22          THE COURT:  All right.  Anything further from the

23  defense on the --

24          MR. PRUSAK:  Yes, Your Honor.

25          THE COURT:  -- request for an adjustment for a minor

13

1    role?

2         MR. PRUSAK:  Okay.  We don't think he could be

3    considered as a middleman or a courier.  He certainly knew

4    where the narcotics were, who had them and how to get them,

5    Your Honor, but they were not his narcotics, he did not

6    deliver them.  He made minimal compensation.  And after one

7    transaction, his involvement was complete.  He didn't take

8    part in any other transactions that occurred after that.

9         And again, it's our contention that the commission of

10   this offense would have been completed without his

11   involvement.  He was not an essential party other than the

12   initial introductions to this.  He was kind of like a

13   hanger-on.

14        And the reason I wanted to bring up his mental state

15   at this point, Judge, was because it's part of his involvement

16   in this case.

17        He's a weak person as far as his mental capacities

18   are concerned.  And you have Dr. Gutzmann's report which I

19   attached to my motion, Your Honor, and that mainly goes to the

20   obstruction of justice part of this sentencing hearing, but I

21   think you should take it into account when you look at his

22   involvement.  He was trying to impress an old girlfriend,

23   Judge.

24        THE COURT:  Attached, at least my copy of the report,

25   was only a part of Dr. Gutzmann's --

**Colleen M. Conway, Official Court Reporter**

14

1           MR. PRUSAK:  I'm sorry, Judge.

2           THE COURT:  -- materials, pages 3 and 4.

3           MR. PRUSAK:  Your Honor, I had --

4           THE COURT:  I mean, I know what the whole report

5    says --

6           MR. PRUSAK:  Right.

7           THE COURT:  -- because I received it.

8           MR. PRUSAK:  Right.  Okay.

9           THE COURT:  You said you attached the report --

10          MR. PRUSAK:  Yeah, I --

11          THE COURT:  -- to your motion, but it's only been a

12   part --

13          MR. PRUSAK:  -- thought I did it in my copy.

14          THE COURT:  -- of what's been attached.

15          MR. PRUSAK:  Well --

16          THE COURT:  But I've reviewed the entire report, and

17   you have attached pertinent portions of it.

18          MR. PRUSAK:  Yes, Your Honor.  But -- and I think you

19   have to be aware of his mental capacity when you consider his

20   involvement when we're asking for a downward reduction,

21   because it wasn't like he was going to make a profit out of

22   this, Your Honor, it wasn't like he was doing it for some

23   future business.  He was doing it to impress an old

24   girlfriend, maybe in an attempt to win her back or whatever.

25          He is a boy in a man's world, Your Honor.  He was a

15

1  bid player that unfortunately because of how he reacted to his

2  girlfriend's request, he tried to help her out and he got

3  himself in this situation.  We're asking for you to look at it

4  in that light, that it's not like he's a drug dealer who's

5  preying on the souls of the addicts and trying to make a

6  profit, living in a big house, driving a big car, having money

7  to burn.  He lives a very frugal life.  He doesn't make --

8  didn't make much money.  He went from job to job, probably

9  because he couldn't keep a job because of his mental

10  incapacity, his problems with ADHD, and the trauma he

11  suffered.

12          So, Judge, Your Honor, we're asking that he get the

13  downward adjustment for his minimal role in this offense.

14          THE COURT:  All right.  Because Mr. Rodriguez

15  introduced and linked the confidential informant with the drug

16  source, Mr. Castillo, and furthered the transaction beyond

17  that by providing samples which, of course, were provided to

18  Mr. Rodriguez by Mr. Castillo, his involvement was more than

19  that of a mere courier, more than that which would have

20  resulted from his merely introducing the confidential

21  informant with the drug source.  And so because of that, there

22  should be no adjustment.

23          The probation report I believe is accurate in its

24  suggestion that no adjustment is appropriate.  Mr. Rodriguez

25  did not play a minor role in this offense, and, consequently,

**Colleen M. Conway, Official Court Reporter**

1    I believe no adjustment is appropriate.

2              MR. PRUSAK:  Thank you, Judge.

3              THE COURT:  No upward adjustment, of course, and no

4    downward adjustment.

5              All right.  Moving on, then, to the next objection

6    which is to address specifically the emotional mental state of

7    Mr. Rodriguez.  And we do have the report, and I have reviewed

8    the full report from Dr. Gutzmann.

9              You may proceed.

10             MR. PRUSAK:  Thank you, Your Honor.

11             The diagnosis that she gave was attention deficit

12   hyperactivity disorder with parentheses "provisional,"

13   adjustment disorder with mixed emotional features.  That's

14   axis I.  Axis II is personality disorder NOS with narcissistic

15   features.  Axis III, history of blunt head trauma.

16             The government is contending because Mr. Rodriguez

17   wrote a letter to Brittany Nathan, his former girlfriend,

18   threatening her that he is guilty of obstruction of justice

19   and, therefore, should be given no consideration for pleading

20   guilty.

21             Your Honor, I think the most important part of Dr.

22   Gutzmann's whole evaluation of Mr. Rodriguez is her

23   formulation, and that's on the last page of her report.  And

24   if I could just pick out what I think is the most appropriate

25   at this point in my argument:  "Under the current highly

1    stressful situation, he has very limited abilities to manage

2    his thoughts and emotions and must resort to fairly low-level

3    defense mechanisms.  Some of these include refusing to

4    acknowledge painful aspects of reality, devaluation and

5    blaming of others, and acting out on the basis of his feelings

6    rather than reflecting on them and seeking support.  While he

7    has the requisite mental capacity to make a competent decision

8    to plead guilty, he lacks the psychological capacity to cope

9    with the consequences of that decision."

10        (Court conferring with his clerk.)

11            MR. PRUSAK:  What Dr. Gutzmann is speaking to, I

12   believe, Your Honor, is that although Mr. Rodriguez could

13   have -- was competent to plead guilty, he cannot deal with the

14   situation he finds himself in.  He lacks the specific

15   mechanisms that normal people as -- you know, who placed in a

16   similar situation would be able to cope.

17            Judge, the letter that he wrote was not sent directly

18   to Ms. Nathan.  It was sent to Ms. Nathan's mother, I believe.

19   It contained threats which could never be brought forward in a

20   realistic manner.  It was all fantasy, Your Honor.  Ms. Nathan

21   never, I believe, saw the letter until her mother made her

22   aware of it.  And I believe she even wrote to the Court

23   stating that Frank has problems and that she never took the

24   threat seriously.

25            Judge, what we're talking about is an adjustment that

18

1  would bring Mr. Rodriguez up to approximately 14 to 21 years,

2  if my calculations are correct, from an offense that has a

3  base of 10 years.  So we're talking an additional four to

4  seven years of incarceration because he wrote a stupid letter,

5  a letter that, even though it's threatening in tone, could not

6  possibly have been carried out.  That letter was the act of a

7  desperate man who suffers from psychological trauma.  He had

8  blunt trauma when he was younger.  It was repeated later.

9  There's physical reasons why he has a psychological

10  manifestation that can -- results in him not coping with

11  reality.

12         He's had a tremendously tough childhood.  He was

13  removed from his parents' care by DCFS and placed in foster

14  homes.  He's been on all sorts of medication when he was a

15  child.

16         He cannot cope with the situation he finds himself

17  in, and I think that the last few months that Your Honor and

18  the personnel in the court have witnessed Mr. Rodriguez take

19  part in in trying to vacate his plea is just evidence of the

20  fact that he cannot accept the reality he finds himself in

21  because he cannot cope.  He doesn't have the proper mental

22  capacity to cope.

23         Your Honor, it was an act of a stupid, desperate man,

24  but you've got to look at that letter in the context in which

25  it was written and the fact that it could never have been

19

1  possible to carry out.

2          Mr. Rodriguez's own brother whom that letter refers

3  to has actually tried and has cooperated with the government

4  in aspects that go beyond this case and that are not related

5  to this case, but he tried to help his brother out by

6  cooperating with the United States Government.  That was one

7  of the brothers that Mr. Rodriguez referred to that would, you

8  know, cause harm to Ms. Nathan.

9          Ms. Nathan never took the threat seriously, and I

10 know the government does.  Whether Your Honor thinks that

11 that's enough to give him an obstruction of justice in the

12 sentencing is something that I don't think is relevant to the

13 whole total picture of this case, Judge.  It's an aberration

14 that occurred because he does not have the mental capacity to

15 deal with his problems.

16         THE COURT:  Well, Dr. Gutzmann said:  "He has the

17 requisite mental capacity to make a competent decision" --

18         MR. PRUSAK:  Well --

19         THE COURT:  -- "to plead guilty," this is the last

20 lines of her statement --

21         MR. PRUSAK:  Correct.

22         THE COURT:  -- comma, "he lacks the psychological

23 capacity to cope with the consequences of that decision."  He

24 doesn't have a mental capacity problem.  He has an emotional

25 problem, a psychological problem dealing with the consequences

Colleen M. Conway, Official Court Reporter

1    of the decision.

2         He's a competent person, and he's shown it even this

3    morning when he explained to me that he had not had a

4    sufficient opportunity to review the Presentence Investigation

5    Report.

6         There's no question that he has the mental capacity

7    to make a competent decision in any decision in his life.  His

8    difficulty is the psychological capacity, and that's exactly

9    what Dr. Gutzmann found.

10        So you're mixing the words.  He's a competent person,

11   but he has difficulty coping with the decision.

12        MR. PRUSAK:  Well --

13        THE COURT:  He had difficulty coping with the

14   decision to plead guilty.  But beyond the Brittany Nathan

15   situation, he testified falsely at the hearing to withdraw his

16   guilty plea.

17        Now, you can roll your eyes at it, Mr. Prusak.

18        MR. PRUSAK:  No, I'm not rolling my eyes at the

19   Court.

20        THE COURT:  Well, you did.

21        MR. PRUSAK:  Well, I --

22        THE COURT:  That's what he did.  So --

23        MR. PRUSAK:  He did.

24        THE COURT:  -- it seems to me the Brittany Nathan

25   matter is somewhat immaterial at this point.

1          MR. PRUSAK:  Well, Judge, if I can respond?

2          THE COURT:  To what?

3          MR. PRUSAK:  To your comments just now, Your Honor.

4          THE COURT:  Yes, because I put this all in the

5    decision that I made on December 5th, yes.

6          MR. PRUSAK:  I'm aware of that.

7          THE COURT:  Okay.

8          MR. PRUSAK:  And I respectfully disagree with that

9    decision, Your Honor.  But I don't think there's too much of a

10   difference between mental capacity and psychological and

11   emotional problems.

12         THE COURT:  Well, Dr. Gutzmann found there's a

13   difference.

14         MR. PRUSAK:  Well --

15         THE COURT:  Because she made the distinction and she

16   made the distinction for my benefit.

17         MR. PRUSAK:  Yes.

18         THE COURT:  So that I could understand that there is

19   a distinction.  You're trying to blur them back together

20   again.

21         MR. PRUSAK:  No, I disagree again, respectfully,

22   Judge.

23         THE COURT:  Isn't that what you're trying to do?

24         MR. PRUSAK:  No, Your Honor.  I --

25         THE COURT:  Okay.  Well, Dr. Gutzmann was your

1  hand-picked psychiatrist.

2          MR. PRUSAK:  She was.

3          THE COURT:  You've used her in the past.

4          MR. PRUSAK:  Yes.

5          THE COURT:  She has testified for you in the past.

6          She made the determination that she made with regard

7  to Mr. Rodriguez, and it seems to me that we ought to apply,

8  since she's the only psychiatrist that we consulted on this,

9  we ought to apply her determination.

10         I find nothing to dispute her determination, and you

11 don't either, right?

12         MR. PRUSAK:  Well, I do.  No, no.

13         THE COURT:  You disagree --

14         MR. PRUSAK:  No, no, I don't --

15         THE COURT:  -- with her determination?

16         MR. PRUSAK:  I disagree with your interpretation of

17 her --

18         THE COURT:  Well, I just read her words exactly as

19 she wrote them right above her signature on her report.

20         MR. PRUSAK:  If I can respond just briefly, Judge?

21         THE COURT:  All right.

22         MR. PRUSAK:  There is a distinction between legal

23 competence and being competent.  There is -- it takes a great

24 deal more to be insane legally or incompetent legally in a

25 court of law than it does to be a person who has psychological

**Colleen M. Conway, Official Court Reporter**

23

1  and/or mental problems.

2          There's no question that Dr. Gutzmann found Mr.

3  Rodriguez to be competent to plead guilty in a court of law.

4          THE COURT:  Because that was the question that was

5  posed to her.

6          MR. PRUSAK:  Yes, Your Honor.  But you cannot ignore

7  the fact that she found a slue of problems that this man

8  suffers from.  Whether they're labeled mental problems or

9  psychological or emotional problems, they still are problems

10 that are dealt with by a physician and should be treated with

11 medication and/or other therapy.

12         He has a medical problem, whether it's a mental

13 problem or a psychological problem, Your Honor, and because of

14 those emotional and/or psychological or mental problems, which

15 are not enough to find him incompetent or insane, are enough

16 to explain somehow why he cannot accept responsibilities for

17 his actions and why he put us all through the charades we went

18 through of the past month.

19         Judge, he's a messed-up kid, and the fact that he

20 showed us he was messed up by not accepting his responsibility

21 shouldn't be a reason why he should get five or seven or more

22 years in the penitentiary, Your Honor.  It's not going to

23 serve the government any better housing Mr. Rodriguez for

24 additional time.

25         He's looking already at ten years, Your Honor.  To

24

1   get more than that, it would be just to -- it would be piling

2   it on, I think, in my view, Your Honor.  I mean, ten years is

3   a significant amount of time for this transaction.  To give

4   him more time in the penitentiary because he has those

5   emotional problems just wouldn't be right, Your Honor.  It

6   wouldn't be fair.  It wouldn't be -- in my opinion, it

7   wouldn't be just.  He's already getting double digits.

8          He does have a problem, and I think Dr. Gutzmann

9   acknowledged that.  And it's not just a make-believe problem.

10  It's a problem that can be traced to his childhood, can be

11  traced to the trauma that he received on his head.  It could

12  be traced to the fact that he used Ritalin and abused it

13  himself.  It could be traced to a number of things that result

14  in a person who's not balanced.

15         He's kind of like the village idiot, Judge, and if

16  the village idiot's going on in town square and yelling

17  obscenities at people and threatening people, are you going to

18  take the village idiot seriously?  No.  We realize we have

19  people in our society that are like that, and there are ways

20  to deal with him other than giving him more time in the

21  penitentiary.

22         Whatever Your Honor decides to do as far as the years

23  Mr. Rodriguez gets, I would hope that there would be a

24  recommendation that he receive some sort of psychological

25  therapy in dealing with these problems and to see that he --

**Colleen M. Conway, Official Court Reporter**

1  if he needs to be medicated, receives the proper medication.

2          That's all, Judge.

3          MS. REPORTER:  Judge, I need to change my paper.

4      (Pause.)

5          THE COURT:  All right.  I will hear from the

6  government.

7          MR. NIEWOEHNER:  Your Honor, as I think you already

8  pointed out, this is somewhat a moot discussion given Your

9  Honor's finding about his perjured testimony in the November

10 hearing, which I agree it would also provide grounds for

11 finding an obstruction of justice.

12         In terms of this letter, it was sent out

13 approximately three weeks before the psychological report

14 shows that he was found competent.  Nothing in there suggests

15 that he didn't know what he was doing when he wrote the

16 letter.  And the context of the letter does suggest it is

17 something that should be considered given that this is a woman

18 that he had physically acted out towards to the point where

19 she felt she needed to get an order of protection against him.

20 And if we read the context of the letter, I think that speaks

21 for itself.

22         Accordingly, I think the probation report should be

23 upheld and neither acceptance -- should he receive acceptance

24 and he should get obstruction of justice.

25         THE COURT:  Anything further from defense counsel?

**Colleen M. Conway, Official Court Reporter**