26

1          MR. PRUSAK:  No, Your Honor.

2       (Defendant conferring with his attorney.)

3          THE COURT:  The probation officer's comments and

4    analysis of the conduct of Mr. Rodriguez with regard to the

5    Brittany Nathan letter I believe is well founded, and I

6    believe the recommendation for obstruction of justice is well

7    founded as well.

8          In addition to that, Mr. Rodriguez testified falsely

9    at his hearing with regard to his request to withdraw his

10   guilty plea.  He found it necessary to testify falsely with

11   regard to statements that he claims his attorney made, and his

12   testimony is not only not credible, it's false and it was

13   willful for the purpose of attempting to induce me to allow

14   him to withdraw his plea.

15          Mr. Rodriguez has always had the capability of

16   speaking out when it's necessary to speak out to make sure

17   that his rights are fully protected.  He spoke out this

18   morning.  He's done that throughout the time that I presided

19   over this case.  He has no hesitation.  He's fully competent,

20   fully capable of bringing matters to the Court's attention.  I

21   don't find him to be a weak-minded person at all.

22          So, consequently, it seems to me he did attempt to

23   obstruct justice and, consequently, it seems to me that the

24   Probation Office's recommendation is appropriate.

25          Mr. Rodriguez has not accepted responsibility for his

27

conduct, and, consequently, the recommendation to not provide him the additional reduction for acceptance of responsibility is appropriate.

I believe that the Probation Department has accurately suggested the appropriate sentencing calculations under the sentencing guidelines, providing us with a total offense level of a level 34. And because of Mr. Rodriguez's prior criminal history, the convictions that are part of his criminal history, he falls within a criminal history category of a II, and that takes us to a sentencing guideline range of 168 to 210 months.

All right. Having determined the appropriate sentencing guideline range, then I want to move to the next phase of the sentencing procedure which is to first hear from defense counsel, then from the government, and then from Mr. Rodriguez himself before I determine the appropriate sentence in his case.

MR. PRUSAK: You know Mr. Rodriguez's history better than probably most defendants that have been before you, because he's been before you for such a long amount of time. He's been here on many different occasions, Judge. It's contained within the presentence investigation. It's also contained within Dr. Gutzmann's report.

Again, I would like Your Honor to take into account his involvement in the offense, the psychological or emotional

28

1    capacity that he has, the childhood that he's gone through,

2    and the fact that all of the convictions I believe he has had

3    have been for nonviolent offenses.

4            There was one case that was set for trial this

5    morning in the Skokie courthouse in Cook County.  The

6    co-defendant I believe had pled guilty to that.  It's our

7    contention that Mr. Rodriguez would have been found not guilty

8    had he been able to go to trial before the sentencing date.

9            We're asking Your Honor to give him the minimum of

10   168 months under the guidelines.  I don't think there's any

11   risk that Mr. Rodriguez is a threat to the community.  I don't

12   think he's going to be facilitating any drug deals when he

13   gets out.  I think he needs treatment while he's incarcerated,

14   and I think that the minimum would be appropriate here.

15           THE COURT:  All right.  I have not taken into account

16   anything with regard to the alleged offense that Mr. Rodriguez

17   was arrested on which caused me to revoke his bond in

18   connection with the determination as to his sentencing

19   guideline range or with regard to the sentence.  So whatever

20   occurs, I'm basically continuing to presume him to be innocent

21   of that offense.  However, since there was probable cause to

22   believe that he engaged in that offense, his bond was revoked.

23           But I'll hear from the government with regard to this

24   case.

25           MR. NIEWOEHNER:  Your Honor, Mr. Rodriguez is a prime

**Colleen M. Conway, Official Court Reporter**

1  example of a defendant who can't or won't accept

2  responsibility for what he's done.  It began when he was

3  initially arrested in this case -- I mean, if you look at --

4  his initial involvement was someone who was free and willing

5  to be a part of a drug deal.

6         THE COURT:  Yes.

7         MR. NIEWOEHNER:  It began when he was originally

8  stopped.  He gave a partial confession, which he did not fully

9  give the truth, but I will say he did provide some indicia

10  that he knew he was involved.  He had -- he sort of went on a

11  spiral downward from that moment.

12         He -- while on bond, he had -- he seems to want to

13  blame this on Brittany Nathan.  He had physical interactions

14  with her which she complained to Agent DiPodesta which

15  culminated in her getting an order of protection against him.

16         His next step was to get himself arrested, violating

17  the conditions of his bond, not just because he was arrested,

18  but because he was out in the middle of night as you had

19  specifically told him not to do.  Then his next step is to

20  write a threatening letter which speaks for itself.

21         His final step, even after he pleads, he talks to

22  Probation, he again is pointing the finger at Brittany Nathan,

23  demanding to know why she's not indicted and why she's not the

24  person before the Court.

25         He then tries to withdraw his guilty plea, perjuring

1    himself in the process, again trying to shift something about

2    Brittany Nathan and how she was being threatened.

3          And the theme of this defendant, Your Honor, is

4    somebody who will blame his lawyers, who will blame Brittany

5    Nathan, who will blame everybody but himself, and that's a

6    troubling fact when you look at some of the statements and

7    conduct he does have, that there is a suggestion that he can

8    be a dangerous person.

9          When he was found, he had all the gun paraphernalia,

10   though we could not find a gun.  His statements on tape that

11   I've attached in the government's version where he makes,

12   frankly, murderous statements about Brittany Nathan, followed

13   up by his physical acts, his written letter, all these things

14   suggest, Your Honor, a person who until the moment when he can

15   actually look at himself and acknowledge he did something

16   wrong, he is a threat to other people around him, whether it's

17   Brittany Nathan or anybody else.

18         Therefore, Your Honor, the government would suggest

19   that a range between the midpoint and the high end of the

20   range would be appropriate in this case.

21         THE COURT:  All right.  Mr. Rodriguez, before I

22   determine the appropriate sentence in your case, I want to

23   hear from you.

24         THE DEFENDANT:  All I can see, Your Honor, is I'm

25   getting -- I'm being tortured here by the prosecution like I'm

1    some mutant.  I've been on bond for so long, if he says I was

2    murderous or did it to the community, why haven't I killed

3    anybody?  As he says how murderous I am, why haven't I beat

4    anybody up or put anybody in the hospital?  If that was the

5    case, my record would show that I violated my bond for hurting

6    somebody or I killed somebody or caused somebody danger.

7         When I was on bond, I was helping feed the homeless

8    at a center in the south side.  I don't see how that's a

9    danger to the community if I'm helping feed the homeless.  And

10   I can verify it and have the people who own the shelter come

11   speak on my behalf.

12        And I asked my attorney also, and I don't know why

13   they keep bringing up Brittany Nathan if that was the case,

14   why don't they have her come here and speak for herself to

15   show what kind of person I am?

16        As Your Honor has seen, many times her mother came to

17   court.  I didn't put to gun to her head or threaten her, "You

18   have to come to court or I'm going to kill you," or anything.

19   And when she seen Your Honor, she spoke on my behalf.  Her

20   mother has came here several times.

21        So I don't see why if I don't -- I think that's

22   uncalled for, that what the prosecution has said, because if

23   I've been on bond so long, well, how come I haven't did

24   anything what the prosecution said?

25        As a matter of fact, when I was on bond, I was

32

1  working in downtown.  I was working for Cara Seta (sic),

2  delivering copy machines.  I've been all over downtown.

3          THE COURT:  What was that company?

4          THE DEFENDANT:  Cara Seta, Cara Seta, Cook County

5  Photocopy.  It's -- we sell Mita, Cara Seta machines.  I was a

6  delivery person.  I, in fact, delivered machines all over

7  downtown.  That's -- when I was on bond, I delivered a couple

8  machines to city hall.

9          So if I was that dangerous, what would I be doing in

10 city hall where the mayor is at of all people?  And I also

11 delivered a couple machines to aldermans.  So if I was that

12 much of a danger, why was I given a bond and why was -- why

13 was I interacting with the community?  I didn't cause anybody,

14 you know -- and my record shows it.

15         That's why I feel that your prosecution, you know,

16 I'm murderous, I mean, that's kind of really uncalled for.  I

17 mean, I don't have any bias in my background.  I mean, I never

18 killed nobody, I never hurt nobody.  I don't use drugs.  Even

19 though I do take some pills, you know, here and there, you

20 know, for my mental, my mental state.  But otherwise than

21 that, I believe that's really -- I believe that's a shot, you

22 know, hitting below the belt there, Your Honor.  My record

23 speaks for itself.  I mean --

24         THE COURT:  Anything else?

25         THE DEFENDANT:  I guess that's all I have to say.

1          I would wish, I would wish that my brother was here

2    to speak of that and my mother, but I don't know why they're

3    not here today.  They said they were going to come, that

4    they -- to speak to my behalf to, you know, to, you know, my

5    prosecution.  I don't know how the prosecution could speak for

6    them if they're not here.

7          I think it would be kind of fair, you know,

8    justice-wise to have them speak, you know, in open court to

9    Your Honor on how -- what kind of person I was instead of

10   hearing prosecution trying to interpret it, what kind of

11   person I am, you know, if they're not here.

12         How can he speak for somebody if he doesn't -- you

13   know, he didn't speak to them personally of what kind of

14   person I am?  I don't understand.

15         THE COURT:  Anything else?

16         THE DEFENDANT:  That's all I got to say.

17         THE COURT:  Anything else from any counsel?

18         MR. NIEWOEHNER:  No, Your Honor.

19         MR. PRUSAK:  Just he's the village idiot, Judge.

20   He's just as harmless as a village idiot.  The stuff that

21   comes out of his mouth, every day I come here and I'm

22   wondering what's going to happen next.  It's like being on a

23   ship with a loose cannon.  You don't know where it's going to

24   roll.

25         I don't think you should punish him for his idiocy.

34

1  I think the guidelines, the minimal sentence under the

2  guidelines is sufficient to send a message to Mr. Rodriguez

3  that he did wrong and he should accept responsibility for

4  that, but to give him any additional time, Your Honor, I don't

5  think is really appropriate with this defendant under these

6  circumstances.

7          I mean, we all know him so well.  I mean, it's become

8  almost a joke watching him, but it's a real sad joke, Judge.

9  And to give him more time because he's an emotional midget I

10  don't think would be fair and just.  I think the 168 months

11  would be sufficient.

12          THE COURT:  Anything further, Mr. Rodriguez?

13          THE DEFENDANT:  I like to know with my brother's

14  cooperation with the government, if that's going to benefit me

15  anyhow and giving me somewhat a downward departure.  That's

16  what my brother -- according to the prosecution, he said that

17  he's given them a lot of information pertaining to some other

18  cases, so I have to know about that, because I don't -- my

19  attorney's not telling me anything, so I'm going to ask Your

20  Honor if that's going to -- how is that going to affect my

21  case and some downward departure.

22          THE COURT:  Your brother's cooperation was your

23  brother's cooperation.  I'm aware of your brother's

24  cooperation.  There will not be a downward departure because

25  of your brother's cooperation.  I'm sentencing you within the

**Colleen M. Conway, Official Court Reporter**

35

1   guideline range.

2          But before I make the determination as to what the

3   appropriate sentence is within the guideline range, I want to

4   hear anything further you want to say.

5          THE DEFENDANT:  Who, me?

6          THE COURT:  Yes, you.

7          THE DEFENDANT:  Oh, well, well, when I first got in

8   trouble with the government, the agents said if I knew anybody

9   who give, you know, give information to, you know, bring

10  cases, it would benefit me.  When I go to sentencing, I will

11  get less time if -- that's all according to them.

12          I don't know if who -- I don't know, every time I

13  speak, you know, everybody's calling me a liar, I might get an

14  obstruction of justice or something.  But my brother was here

15  this morning.  I don't know why he's not here, I don't know

16  why he's not here to speak on my behalf to say, you know, what

17  the government said, because I'd rather him tell Your Honor.

18  That way, I wouldn't be accused of lying.

19          You know, that's what I told my brother, that by him

20  giving information, it will benefit me somehow when I get

21  sentenced.  I don't see how it's benefiting me anything by him

22  getting -- cooperating with the government.  I don't

23  understand.

24          According to what the agents who are sitting here in

25  court told me and my brother, my brother put his life on the

36

1    line and jeopardized my family, also my mother and my father,

2    the information he's gave to the government.

3            He was just here this morning.  I don't know where

4    he's at.  Maybe he could speak on my behalf.

5            I wish these people were here, Your Honor, to speak

6    on my behalf, but --

7            MR. PRUSAK:  Is there anything else you want to say?

8            THE DEFENDANT:  I wish I -- I wish they were here.  I

9    mean, there might have been some way that, you know, they

10   could -- I thought at sentencing I could have people speak on

11   my behalf.  I don't see anybody here.  I don't -- they were

12   just here, but --

13           THE COURT:  If he was here, he could speak on your

14   behalf, but he's not here.  You say he was here this morning.

15   I don't remember him being here during the proceedings.  He

16   came in at some point in time after the proceedings, and my

17   clerk told him that it would start again at 1:30.  We moved

18   this to 1:30 because you needed more time to review the

19   Presentence Investigation Report.

20           Is there anything else you want to say?

21           THE DEFENDANT:  No, Your Honor.

22           THE COURT:  All right.  Pursuant to the Sentencing

23   Reform Act of 1984, it is the judgment of the Court that the

24   defendant, Frank Rodriguez, is hereby committed to the custody

25   of the Bureau of Prisons to be imprisoned for 180 months on

37

1  Count 1.

2       It is further ordered that the defendant shall pay a

3  fine of $500 with payments to begin immediately.  Any portion

4  of the fine that's not paid by the time the defendant's

5  released from imprisonment shall become a condition of

6  supervision.

7       It's ordered that the defendant pay the special

8  assessment of $100.  That's also due immediately and must be

9  paid before any payment toward the $500 fine.

10       The reason that the fine is not even the minimal fine

11  is the defendant does not have the financial capability of

12  paying even the minimum fine under the guidelines.

13       Upon release from imprisonment, Mr. Rodriguez, you

14  are to be placed on supervised release for a term of three

15  years.

16       Within 72 hours of your release from the custody of

17  the Bureau of Prisons, you are to report to the Probation

18  Office in the district in which you are released or to the

19  Probation Office here in this district if you can return to

20  the district within that same 72-hour period, but you must

21  report to a Probation Office within that period of time.

22       Do you understand that?

23       THE DEFENDANT:  Yes.

24       THE COURT:  All right.  While you're on supervised

25  release, you are not to commit another federal, state, or

38

1    local crime.  You are to comply with all the standard

2    conditions of supervised release.

3           Also, you are to refrain from any unlawful use or

4    possession of a controlled substance.

5           You're to submit to 1 drug test within 15 days of

6    your release from imprisonment and random and periodic drug

7    tests thereafter conducted by the United States Probation

8    Department, not to exceed 104 drug tests per year, each year

9    of your supervised release.

10           You are not to possess a firearm or destructive

11    device.

12           You are to comply with the following special

13    condition as well.  You are to participate in a mental health

14    treatment program at the direction of the probation officer.

15    I believe that you can obtain some assistance from the mental

16    health treatment program, but you yourself must be willing to

17    accept that assistance.

18           Also, I'm going to require as a special condition

19    that you along with your co-defendants, Castillo and Barrera,

20    pay back to the government $3,000 in buy money as a special

21    condition of your supervised release pursuant to 18 U.S.C. §

22    3583(d).  Any payment made by Mr. Castillo or Mr. Barrera will

23    be credited toward you, and likewise any payment by you will

24    be credited toward them.  The priorities of payment will be

25    that the $100 special assessment must be paid first, then the

39

1    buy money must be paid back next, and then the $500 fine will

2    be paid, will be credited toward you.

3              You do have a right to appeal from the decisions that

4    I have made in connection with your case.

5              Do you understand that, Mr. Rodriguez?

6              THE DEFENDANT:  Oh, yes.

7              THE COURT:  And in doing so, filing a notice of

8    appeal, you should file that notice within ten days of today

9    with the United States District Court Clerk.

10             Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Okay.  Is there anything else we need to

13   take up today?

14             MR. NIEWOEHNER:  Your Honor, the government moves to

15   dismiss Count 2 of the indictment.

16             THE COURT:  All right.  Count 2 will be dismissed.

17             Let me ask the probation officer.

18             MS. COX:  Your Honor, just for clarification, did you

19   say three years' supervised release?

20             THE COURT:  Yes.

21             MS. COX:  I believe I see in the record that it

22   stated three years, but I believe the statutory requirement is

23   five years.

24             THE COURT:  There is a statutory requirement of five

25   years?

1          MS. COX:  Of at least five years, Your Honor.

2          THE COURT:  All right.  Well, if the statute requires

3    it, there really isn't much I can say about it.

4          Perhaps we could clarify that point.  What statute

5    are you referring to?

6          MS. COX:  That's 21-841(b)(1)(C).

7          THE COURT:  All right.  Let me ask government counsel

8    what's your position on it?

9          MR. NIEWOEHNER:  Your Honor, I neglected to bring my

10   statute book up.  That does square with my memory.

11         THE COURT:  Yes.  I was looking at the

12   Recommendations section of the Probation Department.

13         MS. COX:  I apologize for that error, Your Honor.

14         THE COURT:  Let me review one other item.

15     (Pause.)

16         THE COURT:  What's happening?

17         A DEPUTY MARSHAL:  Do you want him out here, Your

18   Honor?

19         THE COURT:  No, no, I don't.

20         Mr. Rodriguez is being handcuffed because he's

21   becoming irritated.  He may be handcuffed --

22         MR. PRUSAK:  Judge --

23         THE COURT:  -- but I need to have Mr. Rodriguez back

24   in here.

25         A DEPUTY MARSHAL:  Pardon me, Your Honor?

1           THE COURT:  I need to have him back in here.

2           A DEPUTY MARSHAL:  He was starting to go, he started

3    or was going to go off, so --

4           THE COURT:  Okay.

5           A DEPUTY MARSHAL:  -- I opened the cuffs on him,

6    please.

7           THE COURT:  All right.  No, please, you can cuff him.

8           If the marshal believed that he was about to take

9    action against some individual, then that's certainly

10   consistent activity by the marshals to handcuff him.

11          All right.  It seems to me under the statute that the

12   minimum period of supervised release for this offense is five

13   years, that the Recommendations section that I was relying

14   upon actually is in error, and that the supervised release

15   should last for a period of five years pursuant to the

16   statutory mandate, and so, consequently, the period of

17   supervised release will be five years.

18          Do you understand that, Mr. Rodriguez?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Okay.  Anything else?

21          MR. PRUSAK:  Yes, Your Honor.

22          I believe Mr. Rodriguez wishes to have me relieved as

23   his attorney.  I think he wants to handle the appeal with

24   himself or another counsel, so I would be asking to withdraw

25   at this time pursuant to his wishes.

42

1        THE COURT:  Is that your request, Mr. Rodriguez?

2        THE DEFENDANT:  Yes, it is, Your Honor.

3        THE COURT:  All right.  You understand that you will

4   then have the responsibility to file the notice of appeal with

5   the Clerk's Office of the United States District Court within

6   the statutory period if I allow your attorney to be relieved

7   from further responsibility in connection with this case?  Do

8   you understand that?

9        THE DEFENDANT:  You mean me or if I get a new

10  attorney?

11       THE COURT:  You have the responsibility to do that.

12  If you hire a new attorney between now and the time that the

13  notice of appeal is filed, then your attorney will have the

14  responsibility to comply with the law and with your wishes.

15  If you wish to file a notice of appeal, then your attorney can

16  carry out that responsibility for you and will understand how

17  to do it.  But if you don't hire a new attorney between now

18  and ten days from now, you have the responsibility to have

19  that accomplished.

20       Do you understand that?

21       THE DEFENDANT:  Yes.

22       THE COURT:  All right.  Are you going to hire a new

23  attorney?

24       THE DEFENDANT:  Well, I'm going to try.

25       THE COURT:  Okay.  All right.  All right.  Well, if

43

1  it's your wish to have Mr. Prusak relieved, then I will

2  relieve him from further responsibility.

3          Is that your wish?

4          THE DEFENDANT:  If I get a new attorney, does he give

5  him all the paperwork from him or -- when I hire a new

6  attorney or --

7          THE COURT:  You'll have to work that out with Mr.

8  Prusak and the new attorney.

9          THE DEFENDANT:  Well, Your Honor --

10         THE COURT:  I'm sorry?

11         THE DEFENDANT:  No, I'm just -- I'm trying, you know,

12 to ask a legal question of when I get a new attorney, does he

13 have the right to get that paperwork?

14         THE COURT:  And I am saying that you'll have to work

15 that out with Mr. Prusak and the new attorney.

16         MR. PRUSAK:  I will turn over any and all documents

17 in my possession to the new attorney.

18         THE COURT:  All right.  Then that's worked out.

19         Anything else?

20         THE DEFENDANT:  Yes, Merry Christmas and Happy New

21 Year.

22         THE COURT:  All right.  Thank you.

23         We'll stand in recess.

24         MR. PRUSAK:  Your Honor, I'm relieved?

25     (Proceedings concluded.)

Colleen M. Conway, Official Court Reporter

1                    C E R T I F I C A T E

2

3

4

5            I, Colleen M. Conway, do hereby certify that the

6    foregoing is a complete, true, and accurate transcript of the

7    proceedings had in the above-entitled case before the

8    Honorable JAMES F. HOLDERMAN, one of the judges of said Court,

9    at Chicago, Illinois, on December 17, 2002.

10

11

12    _____              3/6/03
                                           _____
13        Official Court Reporter              Date
       United States District Court
14       Northern District of Illinois
             Eastern Division

15

16

17

18

19

20

21

22

23

24

25


        Colleen M. Conway, Official Court Reporter