

# FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAR 1 8 2008

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

**MAR 1 8 2008**

FRANK RODRIGUEZ, Pro Se          )
         Movant,                )
                            )
                            )
         v.                     )          Case No.   07 C 6661
                            )                     (01 CR 567-2)
                            )
UNITED STATES OF AMERICA,         )
         Respondent.            )

### MOVANT'S TRAVERSE BRIEF SETTING FORTH OBJECTIONS AND ARGUMENTS TO THE UNITED STATE'S RESPONSE SEEKING TO DISMISS MOVANT'S MOTION REQUESTING RELIEF PURSUANT TO 28 U.S.C. § 2255

**AND NOW** comes Movant Frank Rodriguez, pro se, pursuant to Fed.R.Civ.P. Rule 5, and hereby respectfully submits this traverse brief setting forth specific meritorious objections, arguments and precedent Seventh Circuit Court of Appeals case law which justifiably contradict the interpretive nature of the Government's response. Contrary to the substance contained in the Government's rebuttal, Movant Rodriguez is unquestionably entitled to an evidentiary hearing in the instant matter before this Honorable Court. In further support of this assertion, Movant Rodriguez respectfully submits the following facts and information for this Court's review, examination and analysis prior to rendering its report, recommendation and opinion.

<u>ARGUMENT AND
CITATION OF AUTHORITIES</u>

I.    Whether Movant Rodriguez Was The Recipient Of Ineffective
Assistance Of Counsel When Trial Counsel Failed To Ascertain
Genuine Facts And Familiarize Himself With The Law In
Relation To The Plea When Willingly Accepting The Govern-
ment's Version Of Events And Elements Of The Offense.

Movant Frank Rodriguez respectfully avers that Assistant
United States Attorney Christopher S. Niewoehner has explicitly
confused, misplaced and inconceivably befuddled the crux of
Rodriguez's creditable argument(s) in the instant case before
the bar. The primary dispute and matter to be settled by the
Honorable Court encompasses Movant's numerous meritorious claims
of ineffective assistance of counsel, as well as the obvious
facts that he (Movant) was induced, persuaded and unduly influenced
by attorney Raul Villalobos into accepting the **egregious plea
agreement** in an **unknowing**, **unintelligent** and **involuntary manner**.
There is absolutely no question whatsoever that Movant's sub-
stantial rights have been adversely affected, thus resulting
in the entire proceeding(s) having been **biased** and **prejudicial**.
See **Tollett v. Henderson**, 411 U.S. 258, 266, 93 S.Ct. 1602,
1607, 36 L.Ed.2d 235 (1973).

The Sixth Amendment to the United States Constitution guarantees
that criminal defendants are entitled to the assistance of counsel
in presenting their defense. **U.S. Constitution, Amendment VI.**
The High Court stated, "The right to counsel is a fundamental
right of criminal defendants; it assures the fairness, and thus

the legitimacy of the adversely process." See **Kimmelman v. Morrison**, 477 U.S. 365, 374 (1996).    Furthermore, the Court has recognized that "the right to counsel is the right to effective assistance of counsel."    See **McMann v. Richardson**, 397 U.S. 759, 771 (1970)(emphasis added).

With all due respect to this Honorable court, Movant Rodriguez is cognizant of the fact that to succeed on a claim of ineffec-tive assistance of counsel Movant must show that his "counsel's conduct so undermined the proper function of the adversarial process that the trial, or in this case the plea agreement, cannot be relied on as having produced a just result."    See **Strickland v. Washington**, 466 U.S. 668, 686, 104 S.Ct. 2055, 2063 (1984).    In complying with the two-prong test set forth in **Strickland**, Movant will unequivocally demonstrate through court transcript(s) and exhibit(s) that the representation he received from attorney Raul Villalobos "fell below an objective standard of reasonableness" and "a reasonable probability that but for counsel's unprofessional error(s), the results of the proceedings would have been different."    **Id.** at 688, 694; see also **Lockhart v. Fretwell**, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Moreover, the **Strickland** test requires courts to focus upon whether counsel's performance was sufficient to ensure the fundamental fairness of the proceeding.    However, the pre-judice that must be shown by Rodriguez need not be anything

3

more than something as one additional day in jail.  See **Glover
v. United States**, 531 U.S. 198 (2001).  While "strategic choices
made **after a thorough investigation** of law and facts...are
virtually unchallengeable, strategic choices made **"after"** less
than complete investigations are reasonable precisely to the
extent that reasonable professional judgment support the limi-
tations of an investigation.

The failure of attorney Raul Villalobos to investigate
key evidence, alleged relevant conduct, and what has turned
out to be a decisive point in the prosecution of Movant has
offended Movant's Sixth Amendment guarantees.  Namely, the
**precise type of cocaine** that Rodriguez was allegedly involved
with when arranging a sale between his friend Pedro Castillo
and a confidential informant (hereinafter CI).  Cyclopean to
the Government's case-in-chief is the **document disputed contention**
between Movant Rodriguez and Government prosecutors regarding
the type of cocaine that was sold to the CI.  Was it "powder"
or "crack" cocaine?  The Government insists it was "crack" cocaine,
however, Movant firmly declares it was "powder."  Simply put,
this Court must  now decide this ongoing argument.

Defense counsel has a responsibility to conduct a prompt
investigation of the circumstances of the case and explore all
avenues leading    facts relevant to the merits of the case
and the forthcoming penalty.  This perfidious assertion by the

4

Government characterizing "powder" cocaine as "crack" cocaine
is simply fiction, therefore, it was the professional respon-
sibility and duty of attorney Villalobos to refute and disprove
this false avowal of Government agents and prosecutors.  See
**ABA Standards For Criminal Justice 4-4.1 (a) (3rd Ed. 1993).**

In fact, the courts have recognized that, in certain cir-
cumstances, failure to investigate a defense would amount to
ineffective assistance of counsel requiring a reversal of the
conviction.  Much to the chagrin of Movant Rodriguez, attorney
Villalobos abandoned his client when failing to examine, study
and review the tape recordings and tape transcripts, which took
place between Movant Rodriguez and the CI.  If in fact Mr.
Villalobos would have performed as counsel guaranteed by the
Sixth Amendment, he would have easily discovered an elementary
difference between the Government's version and eventual accusa-
tion that their investigation only encompassed "crack" cocaine
from its inception to the final arrest.

Curiously enough, defense counsel Raul Villalobos never
sought to challenge whether his client (Rodriguez) had only
been involved in an agreement to distribute "powder" cocaine,
despite the undeniable evidence that powder cocaine and mari-
juana were the **only** drugs discussed in the initial discussion(s)
and transaction.  Hence, the drug samples provided by Pedro
Castillo to Movant Rodriguez who forwarded the samples to the CI.

5

The U.S. Supreme court in **Powell v. Alabama**, 287 U.S. 45, 57, 77 L.Ed.2d 158, 53 S.Ct. 55 (1932), described the pre-trial period as "perhaps the most critical period of the proceedings... that is to say, from the time of their arraignment until the beginning of their trial or plea negotiations, when consultation, through onging investigation and preparation were vitally important."   Unmistakably, attorney Villalobos **dropped the ball** when failing to protect Rodriguez's vital interests and constitutional protections guaranteed by the Sixth Amendment.

Even more disturbing is the fact AUSA Christopher S. Niewoehner steadfastly refuses to admit that Rodriguez's only involvement in this so-called "crack" cocaine conspiracy was that of a go-between or middleman between Pedro Castillo and the CI.  It is a documented and proven fact that the only crime Movant Rodriguez is guilty of is conspiring to arrange a "powder" cocaine sale of three (3) ounces between Pedro Castillo and the CI.  Nothing more, nothing less.  There was absolutely no talk, discussion or conspiracy to sell "crack" cocaine between Movant Frank Rodriguez and the CI.

The Government has erroneously stated on page 7 of its response, that Rodriguez's entire argument is premised on a flawed premise – that there was no evidence of Rodriguez's agreement to participate in a crack conspiracy, as opposed to a powder cocaine conspiracy.  The Government has mistakenly declared, "This is simply not true."  With all due respect, it is the

Government's position that is blemished.  In further support
of Movant Rodriguez's position that he was involved in a "crack"
cocaine conspiracy is the sworn affidavit of Government Special
Agent Frank L. De Podesta which attests to the fact there was
**never** any talk or discussion between Rodriguez and the CI regard-
ing the delivery and sale of "crack" cocaine to the undercover
operative.  Surely, the affirmation of a Federal Law Enforcement Agent
must carry a smidgen of credibility with the U.S. attorney's
Office and this Honorable Court.

The truth of the matter is the documented fact that Movant
Rodriguez set up a deal for his friend, **not co-conspirator**,
Pedro Castillo to deliver three (3) ounces of "powder" cocaine
to the CI.  This information is nothing new and has been sub-
stantiated on numerous occasions in various reports, narratives
and descriptive accounts.  What happened and transpired after
the delivery of the "powder" cocaine has absolutely nothing
whatsoever to do with Rodriguez.  More notably, it was the
Government's CI who initiated and craftily **"ENGINEERED"** and
**"DEMANDED"** Pedro Castilo convert the "powder cocaine into hard
or "crack" cocaine.  As it were, Movant Rodriguez wasn't even
in the building at that time and **knew nothing about it**! Not
to mention the fact, Movant Rodriguez was not paid, nor received
any type of compensation in this alleged "crack" cocaine con-
spiracy.

7

Quite frankly, to sentence a criminal defendant for the alleged sale or alleged conspiracy to sell "crack" cocaine rather than some other form of cocaine, the Government shoulders the burden of proving by a preponderance of the evidence that the substance in question was in fact "crack" cocaine. See **U.S.S.G. § 2D1.1 Table n:, 18 U.S.C.A.** In light of the circumstances surrounding the alleged FBI electronically recorded conversation which took place on June 6, 2001, between Movant Rodriguez and the CI regarding the **ALLEGED** future purchase of three (3) ounces of "crack" cocaine from Movant. This declaration by the Government is complete fabrication and wishful thinking on the part of the U.S. Attorney's Office. Nonetheless, it was the professional responsibility and duty of defense counsel Raul Villalobos to secure this tape recording from the prosecution in order to contest, refute and intensely defend his client against these illusory imputation(s).

Movant Rodriguez respectfully submits that under the law and facts applicable at the time of instant offense, it must be presumed by this Court that attorney Villalobos knew, or should have put forth the effort to ascertain, that the fictitious charges allegedly involving "crack" cocaine in Counts One and Two of the indictment could not be supported by embellished facts surrounding the instant case.

8

Moreover, attorney Raul Villalobos **was obligated to his client** to procure any exculpatory or damaging material that may arise by way of "discovery" and specifically **Brady v. Maryland,** 373 U.S. 83 (1963). This would obviously provide defense counsel ample opportunity to make a conscious effort to hear these so-called FBI tapes with respect to Rodriguez, the CI and this **ALLEGED** arrangement to purchase "crack" cocaine. In a nutshell, defense counsel Villalobos' representation was a complete sham and a consummate a mockery of the judicial system. See **Transcript of Proceedings,** April 30, 2002, page 15, lines 14-23 and page 22, lines 1-25.

In the instant case before this Honorable Court, Rodriguez readily concedes the point it would falsely appear at the conclusion of critiquing the Rule 11 plea hearing colloquy transcripts that Movant Rodriguez was completely satisfied with the performance of defense counsel Raul Villalobos. Significantly, nothing could be further from the truth. With all due respect, U.S. District Judge, James F. Holderman, further decided, albeit erroneously, that Rodriguez's guilty plea was knowingly, voluntary and intelligently entered into and supported by an independent factual basis.

Movant respectfully contends at sentencing, the Government bore the burden of proving by a preponderance of the evidence that the substance at issue was "crack" cocaine. See **United**

9

States v. Benjamin, 116 F.3d 1204, 1207 (7th Cir.1997).   More importantly, it was the responsibility of Mr. Villalobos to Movant Rodriguez that this burden was satisfied by the Government.   Once again, attorney and defense counsel failed in his professional responsibilities to protect his client's vital interest(s).   See Evitts v. Lucey, 469 U.S. 387, 83 L.Ed.2d 821, 105 S.Ct. 830 (1985).

If the Government fails to meet this burden, which is the exact scenario in the case before the bar, and Movant was sentenced under "crack" cocaine guidelines anyway...a District Court commits reversible error.   See United States v. Adams, 125 F.3d 586, 593 (7th Cir.1997).

Because the Guidelines instruct the judge to determine both the amount and kind of controlled substances for which a defendant should be held accountable, and then to impose a sentence that varies depending upon those determinations, see, e.g., Witte v. United States, 515 U.S. 389, 132 L.Ed.2d 351, 115 S.Ct. 2199, it is the judge who is required to determine whether the "controlled substance(s) at issue - and how much of them - consisted of cocaine, crack, or both."

Movant Frank Rodriguez respectfully asserts that the U.S. District Court erred in calculating his sentence based on "crack"

rather than another form of cocaine (powder) that would not
merit the increased sentence for "crack."  See **United States
v. Jackson** 64 F.3d 1213, 1219 (8th Cir.1995).  Did defense
counsel Villalobos file written objections to the U.S. Probation
Office objecting to the characterization of "crack" cocaine
in the Presentence Report, as opposed to "powder" cocaine?
**No**, he **did** **not**!

When reviewing Movant's meritorious claims of ineffective
assistance of counsel, this Honorable Court should have no pro-
blem, whatsoever, confirming the fact that Raul Villalobos'
representation "fell below an objective standard of reasonable-
ness" and "a reasonable probability that but for counsel's
unprofessional error(s), the results of the proceedings would
have been different.  See **Strickland**, supra.

Movant Rodriguez first appeared before this Honorable Court
on April 25, 2002, and **did** **not** **plead** **guilty** on this date because
his defense counsel, Raul Villalobos, indicated that he had
difficulties communicating with Movant.  At this time there
was a **total** **lack** **of** **communication** between Villalobos and Movant
Rodriguez, which goes to show ineffective assistance of counsel
because Villaolobos could not represent the best interest of
his client if he has no idea if counsel was unable to communicate
with Movant.  See **Transcript, April 25, 2002, at 3-5.**

11

Movant then appeared on April 30, 2002, and the Government tendered a signed plea agreement to the Court.  Movant's plea hearing colloquy began at this time but was not completed because Rodriguez declared he had not received a copy of the indictment or discovery materials from defense counsel Villalobos.  See Transcript, April 30, 2002, at 10-11.  Curiously enough, Villalobos had not been completely truthful and forthright with Movant. In contrast to the standard set forth in the Sixth Amendment, attorney Villalobos had Movant <u>sign a plea agreement</u> without supplying him with all the information he had requested during a prior meeting to sign the ill-informed plea agreement.

Here the Defendant is not asserting that he was never given a copy of the pre-sentence report or the plea agreement prior to his signing it, because that would contradict the record and his sworn admissions, but instead that he was not given enough time to review the materials and that due to ineffective assistance of counsel the materials he did have a chance to review were foreign to him of which he could not fully understand what was being reviewed.

Additionally, the Court had to order copies of what had been requested by Movant Rodriguez, which demonstrates that Villalobos either did not care or understand what his client needed, which goes to show an ineffectiveness of counsel. See Transcript, April 30, 2002, at 10-15.

Movant Rodriguez appeared once again on May 1, 2002, at
which time he stated that he had finally received the discovery
materials, which Villalobos failed to give him upon his request,
around 5:00 p.m. the previous day, which did not give him near
enough time to review all of the material.  See Transcript,
May 1. 2002, at 2.  The Court, then determined that Movant would
be provided ONE DAY to review the material which had been supplied
a few days earlier.  See Transcript, May 1, 2002, at 3-7.

Movant respectfully asserts this particular discovery material,
which he was supposed to examine, was to be used to determined,
without the assistance of counsel, whether he should sign a
plea agreement.  It should be noted that Villalobos DID NOTHING
in support of obtaining more review time for Rodriguez.  When
the Court did address attorney Villalobos seeking to determine
a good time to call the case the following day, Villalobos replied
that he had a lot of cases, but that he could juggle his cases
in order to accommodate the Court, this only shows that Villalobos
was acting in his own best interest, concern for his other cases,
and obviously did not seem to care or acknowledge the interest
of Movant.  See Transcript, May 1, 2002, at 6-7.

Although Movant agreed and signed everything the Court
inquired of him during the plea of guilty colloquy on May 2,
2002, Movant still did not understand what type of sentence

13

he would be facing.  Incredibly, defense counsel Villalobos
DID NOT UNDERSTAND the sentencing guidelines the Court would
be implementing.  Movant had no comprehension or understanding
of the "sentencing cap" with respect to Count One.  This unques-
tionably illustrates ineffective assistance of counsel, how
is Villalobos going to advise Movant Rodriguez if he himself
does not understand how the Guidelines are applied.  Notably,
the Court sternly reprimanded defense counsel for ill-advising
Movant as to Rule 11 (e) sentencing cap provisions.  This quality
of representation by a licensed attorney can only be construed
as deficient, inadequate, insufficient and an embarrassment
to the judicial system in America today.

        With all due respect to this Honorable Court, Movant submits
that trial counsel's unprofessional errors and omissions must
be considered in light of the totality of the circumstances.
In other words, the prejudicial effect must be considered together.
See Arrowood v. Clusen, 732 F.2d 1364 (7th Cir.1984); see also,
Goodwin v. Balkcom, 684 F.2d 794 (11th Cir.1982).

II.    Whether Movant Rodriguez' Acceptance Of The Plea Agreement
       Can Be Construed As Knowingly,Voluntarily And Intelligently
       Entered Into In Light Of Defense Counsel's Complete And
       Total Ineffective Assistance To His Client.

        Movant Frank Rodriguez respectfully avers to this Honorable
Court that trial defense attorney Villalobos and appellate counsel
McGowan, must both be held accountable for rendering ineffective

14

assistance during various "critical" stages of Movant's criminal
proceedings.  However, it is attorney Raul Villalobos who must
endure the brunt of the multitudinous constitutional violations
bestowed upon Movant Rodriguez by prosecutors for the Government.

As the various court proceedings demonstrate, attorney
Raul Villalobos was drastically lacking in his knowledge of
the U.S.S.G. Manual and never took the time to spell out or
explicitly explain the negative repercussions associated with
the plea agreement and the sentencing option(s) of the Court.
Attorney Villalobos egregiously and without proper knowledge
of the Guidelines advised Movant to acquiesce to the provisions
contained in the objectionable plea agreement.

Needless to say, but nonetheless contradictory to the instant
case before this Honorable Court, it was defense counsel's
function and professional responsibility to assist Movant and
consult with him on decisions and keep him apprised on important
developments in the course of the prosecution.

Where a defendant pleads guilty, counsel's responsibility
is to determine whether the plea is entered voluntarily and
knowingly...to assist his client actually and substantially
in deciding whether to plead guilty...to provide the accused
with an understanding of the law in relation to the facts,...
and to give advise that permits the accused to make an informed
and conscious choice. See Hill v. Lockhart, 474 U.S. 52, 58-

15

59 (1985).  **Polinzi v. Estelle**, 628 F.2d 417, 418 (5th Cir.1980).

In order to legally plead guilty in a "voluntary" manner, a defendant must be cognizant of the direct consequences of any plea, including the actual value of any commitments made to him.  See **McMann v. Richardson**, 397 U.S. 759 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); (quoting **Brady v. United States**, 397 U.S. at 748, 90 S.Ct. at 1468; see also, **Healy v. Cannon**, 553 F.2d 1052, 1056 (7th Cir.), cert. denied, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977); **Clay v. Director, Juvenile Division, Dept. of Corrections**, 631 F.2d 516, 522 (7th Cir.1980).

Rodriguez respectfully asserts it is perfectly plain that the **sine qua non** to a voluntary plea of guilty is the assistance of counsel "within the range of competence **required** of attorneys representing defendants in criminal cases."

Movant further maintains there can be little question after reviewing court transcripts that ineffective assistance of counsel occurred during the plea negotiations and sentencing process. Moreover, a guilty plea does not preclude Rodriguez from raising a Sixth Amendment claim of ineffective of counsel.  See **Wiley v. Wainwright**, 793 F.2d 1190 (11th Cir.1986).  A plea of guilty **shall** **not** be accepted, unless made "voluntary" **after** **proper** **advise**, and the **full** **understanding** of the consequences of said plea.  See **Boykin v. Alabama**, 295 U.S. 283, 23 L.Ed.2d 274, 89 S.Ct. 1709 (1969).

Defense counsel Villalobos advised Movant that the facts, albeit untrue, of the instant case supported a convictioninvolving the distribution of more than 50 grams of cocaine base or "crack," as well as a conspiracy to accomplish same. Defense counsel advised Movant he was facing as outlined in the plea agreement for a violation of Title 21 U.S.C. § 841(a)(1), § 841 (b)(1)(A) and § 846 a minimum of ten years and a maximum of life in federal prison.

In a nutshell, Movant's plea of guilty was a far cry from being entered in a knowing, intelligent or voluntary manner. Rodriguez had no idea, **and neither did his attorney**, that his **alleged** crime centered on the **alleged** criminal agreement between himself, the CI and ultimately Pedro Castillo to participate as a go-between in the distribution of "powder" **NOT CRACK**, cocaine. The violation of federal drug laws involved the sale and delivery of three (3) ounces of "powder" cocaine, **NOT CRACK** to the Government CI.

Inexplicitly, defense counsel Villalobos **erroneously** advised Movant to enter a plea of guilty to an aggravated drug offense incorporated in a conspiracy charge that Movant Rodriguez **had never committed** and for which there was no factual basis upon which a guilty plea could rest outside of a false declaration, stipulation or admission to a false charge.

Attorney Raul Villalobos rendered objectively **UNREASONABLE**

aggravated drug crime that carries a far greater term of imprisonment than the actual crime Movant was in fact guilty of.  If there ever was a conspiracy by its definition, and that's a highly debatable subject, would be to distribute 84 grams of "powder" cocaine.

As previously stated, defense counsel neglected to ascertain each and every fact of the case, as well as failing to apply the pertinent law to the facts of the case.  Therefore, defense attorney Villalobos performance as counsel was deficient to the point where the incorrect, erroneous and mistaken analysis of the applicable law to the facts prompted Villalobos to encourage Rodriguez to enter a plea of guilty to a charge for which counsel should have advised his client to go to trial.  See Moore v. Bryant, 348 F.3d 238, 241 (7th Cir.2003).

The Government lacked the necessary evidence to establish beyond a reasonable doubt that Movant had conspired with Castillo to distribute "crack" cocaine.  Moreover, reliable and competent counsel would cognizant of the fact that a conspiracy to distribute "crack" cocaine is a distinct and separate crime from a conspiracy to distribute "powder" cocaine.

Movant Rodriguez respectfully contends that the contents of the originally filed § 2255, the transcripts recorded form at least three (3) hearings before U.S. District Judge Holderman, and traverse brief undeniably present a multitude of issues

18

that depict and illustrate attorney Villalobos' uninformed awareness of Movant's forthcoming exposure and the length of the sentence to be imposed upon him.  It only stand to reason that it would have been virtually impossible with Raul Villalobos as his defense counsel, to understand the language of the plea agreement and acquiesce to said plea agreement in an intelligent, informed, voluntary, and knowing manner.  Impossible!

As Court records will corroborate, Movant and attorney Villalobos were experiencing a great deal of difficulty communicating, which clearly suggests that the signed plea agreement was not fully described to Rodriguez in a manner which would allow him to make a knowing and voluntary plea of guilty. Movant did not understand the sentencing cap in regards to count One and no one was made available to assist him.  Although the record may read in detriment to Movant Rodriguez, he vehemently maintains that due to the lack of knowledge and the ineffective assistance of counsel, his plea of guilty and conviction should be stricken from the record and remand Movant for re-sentencing to the appropriate type and quantity of "powder cocaine."

In the alternative, Movant respectfully moves this Honorable court conduct an evidentiary hearing in which to better assist and aid this Honorable Court prior to rendering a decision in this extremely important and critical matter.  In sum, a gross miscarriage of justice has transpired in this case and presents a situation that seriously affects the fairness, integrity or

public reputation of the judicial proceedings.


III. Whether The U.S. District Court Erred When Finding Movant
     Rodriguez Obstructed Justice Resulting In His Sentence
     Being Enhanced Two Base Levels.


In the instant case before this Court, the U.S. District
Court erred by finding that Movant obstructed justice on the
basis of the threatening letter he allegedly sent to Ms. Britane
Nathan.  The nucleus of Movant's argument regarding this subject
matter addresses and objects to the fact the U.S. Probation
Officer who prepared the P.S.I. carefully selected and quoted
a small fragment of the letter.  This resulted in the quoted
portion **being misconceived** in an adverse way resulting in the
unjustified enhancement, thus increasing Movant's federal sentence.


Notwithstanding the above paragraph, any "enhancement"
under U.S.S.G. § 3C1.1 requires "that the defendant **willfully**
**obstructed or impended** the investigation, prosecution or senten-
cing by way of conduct related to the defendant's offense or
a closely related offense."  **U.S. v. King**, 338 F.3d 794 at 799.
Moreover, the Government prosecution has not affirmatively
asserted that the letter "impeded" the investigation **or** prose-
cution at sentencing.  More importantly, the "letter" in question
**NEVER** reached its intended designation and there has never been
any testimony or investigation by federal agents concerning
this matter.

In addition, defense counsel Villaobos objected to the
enhancement that was applied pursuant to U.S.S.G. § 3C1.1, but
unfortunately this objection was denied by the U.S. District
Court.  And, to compound matters, appellate counsel neglected
to include this argument in Movant's direct appeal to the Seventh
Circuit Court of Appeals.  Thereby, it was "objectively unreason-
able" under Strickland v. Washington, 466 U.S. 668 (1984), for
appellate counsel to ignore the issue.

Movant Rodriguez was not only prejudiced by the unprofes-
sional lawyering skills of attorney Villalobos, but further
compounded  by the ineffective assistance of appellate attorney
McGowan. There is no question whatsoever that there is a reason-
able probability that, "but for counsel's error(s), the result
of Movant's "direct appeal" proceeding(s) would have been dif-
ferent."  466 U.S. at 689.

What this amounts is Movant being sentenced at level 34,
Criminal History Category II with an incorrect sentencing range
of 168 to 210 months.  In all reality, Movant should have been
placed in a sentencing range of 97 to 121 months.  Due to this
miscarriage of justice, Movant received a sentence of ~~120~~ 180 months.
Further, Movant has clearly demonstrated both cause and actual
prejudice" to otherwise excuse his failure to raise this worthy
claim on direct appeal.  See Murray v. Carrier, 477 U.S. 478,
488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 297 (1986); see also,
United States Ex Rel. Barnard v. Lane, 819 F.2d 798 (7th Cir.1989).

IV.  Whether Appellate Counsel McGowan Rendered Infeffective
     Assistance Of Counsel On Direct Appeal By Failing To Raise
     The Meritorious Claim Concerning The District Court's
     Refusal To Allow Movant The Opportunity to Withdraw His
     Guilty Plea.


     Movant Rodriguez resepctfully avers that Court records,

documents and the originally filed § 2255 substantiate the fact

there was more than enough reason for the U.S. District Court

to allow Movant the opportunity to withdraw his plea of guilty

in the instant case.


     Accordingly, Movant Rodriguez vehemently repudiates all

arguments and reasoning of the Assistant U.S. Attorney contained

in the Government's response rebutting Movant's position on

this issue.  Contrary to the arguments stated by the Government,

defense counsel Villalobos was **incapable** of articulating the

necessary explanation of the Guidelines in order for Movant

to enter a knowing, voluntary and intelligent plea.  This conten-

tion by Movant, as well as the question and answer period that

took place between Judge Holderman and attorney Villalobos only

substantiates the fact said motion was ripe for being granted.

See **United States v. Schilling**, 142 F.3d 388, 398 (7th Cir.1998).


     Movant was again denied his Sixth Amendment right to the

effective assistance of counsel, specifically, on direct appeal.

This issue as a matter of record, had been properly raised and

preserved in the U.S. District Court.  With all due respect,

the denial of Movant's Motion To Withdraw Guilty Plea must be

## REQUEST FOR EVIDENTIARY HEARING

With respect to the particular issue of ineffective assis-
tance of counsel and the Government's claimed entitlement to
dismissal and/or summary judgment is incongruously misplaced
as it "relies exclusively" on its unfounded and redundant conten-
tion(s) that Movant Rodriguez voluntarily, knowingly and intel-
ligently inter the plea agrement with the assistance of counsel.
Movant Rodriguez respectfully and humbly moves and urges this
Honorable Court conduct an evidentiary hearing as soon as possible
in which to better assist this Honorable Court when "determining
the issues and make findings of fact and conclusions of law
with respect thereto. As a matter of record, the evidence to
date presented in Movant's originally filed 28 U.S.C. § 2255
Memorandum of Law steadfastly set forth veritable dispute(s)
of material fact sufficient to preclude the Government's requested
dismissal of Movant's pending § 2255. See Peavy v. United States,
31 F.3d 1341, 1346 (6th Cir.1994).


A hearing is mandatory "unless the motion, files and records
of the case conclusively show that the prisoner is entitled
to no relief." See Blanton v. United States, 94 F.3d 227, 235
(6th Cir.1996). Additionally, [w]here there is a factual dispute,
and there certainly is in the instant case, the habeas court
MUST hold an evidentiary hearing to determine the truth of Movant's
claims." See Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct.
1029, 145 L.Ed.2d 985 (2002).

viewed as an "abuse of discretion" by the court.  See **United States v. Salgaldo-Oca-Mpo** 159 F.3d 322, 325 (7th Cir.1998).

## CONCLUSION

For the foregoing reasons articulated herein, Movant Rodriguez respectfully prays this Court repudiate the Government's response brief and grant Movant's Title 28 U.S.C. § 2255. There is no question a travesty of justice has occurred at the expense of Movant Rodriguez that must be corrected at this time.

Done this **12th** day of March, 2008.

Respectfully submitted,

FRANK RODRIGUEZ, Pro Se
Reg.No. 13950-424
P.O. Box 350
FCI Beckley
Beaver, WV 25813

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY**, that a true and correct copy of Movant's response brief has been mailed this **13th** day of March, 2008 via First Class U.S. prepaid mail to the following address: United States Attorney's Office, Everett Mckinley Dirksen Federal Building, 219 S. Dearborn Street, Chicago, IL 606604.

Respectfully submitted,

FRANK RODRIGUEZ, Pro Se